# DECISIONS

OF THE

# SUPREME COURT OF MISSOURI.

## THIRD JUDICIAL DISTRICT,

### MAY TERM 1840.

---

### NEWMAN v. LAWLESS.

6  279
59a 307

1. In a declaration in ejectment, the description of the premises contended for, must be such as to enable the jury to identify them, with the description contained in the deeds upon which the plaintiff founds his claim; and other evidence is inadmissible to identify the premises described in the declaration, with those described in the deed.

2. It is error in the circuit court to give instructions to the jury that involve questions of law; therefore, where, as in this case, the court instructed the jury, that they were to disregard all evidence to explain any ambiguity *patent* or *latent*, on the face of the deed, the Supreme court held such instruction to be erroneous, as it was the province of the court, and not of the jury, to decide whether the ambiguity was *patent* or *latent*, The party should have called the attention of the court to what he conceived to be the ambiguity *patent* or *latent*, and required the court to instruct the jury, that such ambiguity could not be explained by any evidence dehors the deed.

3. Plaintiff claimed under one M. who, it was proved, prior to 20th Dec. 1803, had enclosed and cultivated the land in controversy; and, in support of his claim, relied upon the acts of Congress of 13 June, 1812, "making further provision for settling the claims to land in the territory of Missouri": also the acts of April 12, 1814, and April 24, 1816, granting pre-emption rights in certain cases. The defendant claimed under a confirmation, by the recorder of land titles, to the widow of said M. Held: that as the plaintiff had failed to prove that the land, in controversy, was either a town or village lot, out

lot, common field lot, or commons, within the provisions of the act of June 13, 1812, and had shown no compliance with the said preemption acts, nor any grant from either the Spanish or French governments, or confirmation by a board of commissioners, he could not prevail against the defendant, whose confirmation concluded all persons not able to show a complete Spanish or French grant, or a prior confirmation by a board of commissioners, or bring themselves within the provisions of said acts of Congress.

4. The *judgment of the circuit court will not be reversed, on account of erronious instructions given, where the party complaining has shown no right of action.*

Error to the Circuit Court of St. Charles county.

*Bird for Plaintiff in Error.*

1. That according to the evidence and the law of the case as preserved on the record, the jury should have found for the plaintiff, and probably would have done so if the case had been left to them without any erroneous instruction of the court.

2. That south east quarter of block 109 was property separated from the King's domain during the Spanish government and vested in J. B. Marly deceased, and did not pass to U. S. by treaty between her and France but remained in said Marly secured not only by said treaty, but by the law of nations. 4 Peters 512. 9th do 734. 10th do 330–335–726–732–736. 6th do 712. 7th do 86–87. 8th do 444–465. 9th do 133–734–747–748–749. 10th do 305–330–721–732. 6th do 709–714. 8 Peters 450. 9th do 138–144–737. 10th do 105–324–331–35–36–718–736.— 12th do from 434 to 441.

3. That by the act of 13 June 1812 this lot was confirmed to said Marly's children by a legislative grant which vested a complete title in them, which could not be divested or in any way defeated by Recorder Bates, by any subsequent act of Congress, or by the issuing of the patent read in evidence. See 1 Mo. Rep. Vassier vs. Benton—Salle vs. Primm, 3 do 534. Newman vs Lawless, second S. A. part 5th do 236. 12 Peters 453–454–455. 2d S. A. part of 5 Mo. Rep. 346. 9 Cranch 87–299- 7 Wheaton 380. Doe vs. *Unum* et al.

4. That the deeds read in evidence by plff. are good and

sufficient to pass to him such title in said town lot as was ested in the grantors at the date of said deeds. 3 Cruise digest title deed, sections 1, 2, 36, 37, 44, chap. 1. 3 Cruise chap. 23, title 32, from sec. 1 page 415 to sec. 28 page 425. See also section 38. General description in deed or mort-gage good to pass grantors estate, 11 J. R. 365. 13th do 537–551, not so in sheriffs deed. 13 J. R. 97, 537. 18 J. R. 60. 17 do 146. 18 do 81. 19 J. R. 449. 18 J. R. 107.

5. That said lot is a town lot or an out lot, within the meaning of the act of the 13th June 1812, see said act.

6. That the court erred in instructing the jury.

7. That the court erred in over ruling plaintiffs motion for a new trial.

*B. Allen for Plaintiff in error.*

1. That the whole case, considered with reference both to the evidence and the law—wherein I include the correctness of the instructions given by the court below—is now open to review; and if it shall be found that there was any error in the instructions of the court, which materially affected the verdict, or that the verdict was against the weight of evidence, or the law of the case, the judgment should be reversed, Graham on new trials p. 261 to end of sec. 2 Cains Rept 90. 10 Johns Rep. 450–1.

2. That the first instruction given on behalf of deft is erroneous, inasmuch as it excludes from the consideration of the jury all parol and documentary evidence of indentification of the lot described in declaration, with the lot described in the deeds mentioned in that instruction.

3. That the second instruction given on behalf of deft is erroneous, inasmuch as it excludes from the consideration of the jury, all the evidence having for its object the location of the lot described in those deeds. 5 Wheat. Rep. 359.

4. That the third instruction given on behalf of deft is erroneous, inasmuch, as it contemplates that the parcel of ground occupied by Marle prior to 20 Dec. 1803, should have been called and known as a town, or out lot, under the Spanish Government.

5. That the fifth instruction given on behalf of deft. is erroneous, inasmuch, as it assumes that the possession by

Marle, under whom pl'tff claims, must have been under the authority of the French or Spanish Gov't.

6. That the twelfth instruction given on behalf of deft. is erroneous, inasmuch, as it assumes that the act of Congress can only operate in favor of Baptiste Marle, and not in favor of his representatives.

7. That the thirteenth instruction given on behalf of deft is erroneous, inasmuch, as it leaves the jury in uncertainty and ignorance of what is meant by a settlement, but if by settlement a possession prior to 20th Dec. 1803, is comprehended, then the instruction has withdrawn from the jury the consideration of the facts, which it was peculiarly their province to determine, and the court has adjudged the whole case law and evidence in exclusion of the jury. 2 vol. of public land laws 64–72–1014.

8. That the deft is estopped to deny that the parcel of ground possessed by Marle prior to 20 Dec. 1803, was a lot. Comyns Dig. title estoppel 230, 3 sec. 20—deed from F. Marle to Riddick.

9. That the United States government has recognized same as a lot, and no third party is at liberty to gain by the same, or deny that it is such. for the purpose of this suit.

Passing by these points, we come to the following a most material, involving the fate of the case.

1. Was there such possession of the lot sued for, or any part thereof, on which the act of 13 June, 1812 could operate, as to vest a right to same in Baptiste Marle or his legal representatives? This it is affirmed there was. The evidence, act of 1812—Vassier vs. Hence, 1 Mo. Rep. 3.6. Lajoye vs. Primm, 3 Mo. Rep. 524. Adm'r Bac'e vs. Inerno, 4 Mo. Rep. 459, bottom of page. Act of Congress of 26 May 1824, same law 881.

2. Was this right vested in the present plff by the conveyance read in evidence? In support of the affirmative of this question, the plff in error refers to the parol evidence given, and the deeds offered and read by him in evidence and to the act of Congress of 13 June 1812. 5 Cranch's Rep. p. 41, sec. 37–38, and p. 42 sec. 43. 7 Peter. con'd 403. 5 Johns Rep. 222. 11 John. Rep. 365. 13 J. R. 537. 16 J. R. 59–

81–107.  19 J. R. 448.  5 Wheat. Rep. 359.  4 Com. Dig. 235.  3 Starkie's ev. 1000, 1021 and 1695.

3. Was there any outstanding title to defeat the right of the pltff? The pl'ff in error affirms there was not, and relies on the following authoritie : 9 Cran h 87–292.  Strother vs. Lucas, 12 Peters Rep. 410–453, &c.  Morton vs. Blankenship & Ridn, vol. 5, Mo. Rep. 2d senti-an'l part 346.  Lawless vs. Newman, ib page 236.  See act of 1816, ambiguity what.

*L. E. Lawless for Deft in error.*

1. That the deeds of conveyance offered in evidence by plaintiff are void for patent ambiguity and uncertainty on the face of them.  4th Comyns Digest, title "Fait" (Days. Am. ed.) p's 270–254–285, and title "Grant", p. 535.  4th Crui es Digest, title "Deeds" p. 225, 269, 277.  Missouri Rep. vol. 1, y. 553, Perry vs. Price.  7 Johns Rep. p. 217.— 13 Johns Rep. p. 97.  Missouri "act regulating conveyances," Revised Stat. p. 113.  "Act to regulate Deed." Revised Stat. p. 233.  "Act concerning contracts and promises," Revised Stat. p. 117.

2. That the plaintiff failed in establishing the title of John Baptiste Marly to any part of the land described in the declaration, and, more particularly, to the 120 by 150 feet surveyed for Felicite Marly and her legal representatives, because, 1st. No lot was proved to have existed, (but the contrary) on any part of the premises in the declaration mentioned prior to the 20th Dec. 1803, or prior to the special grant by the U. States of said 120 by 150 feet to Felicite Marly.  See the evidence spread on the trasncript: see act of Congress 13th June, 1812, and the act supplementary thereto May 26, 1824.  2. No grant by the French or Spanish Government, or permission to occupy as owner, to J. B. Marly was shewn by plaintiff: see evidence aforesaid. 3. No claim was ever made by said J. B. Marly or his heirs of any part of the land in the declaration mentioned of any government, French, Spanish or American.  See evidence as aforesaid.  4. The grantors of plaintiff had notice of the conveyance by Felicite Marly in 1814, and of the claim on her behalf, and the grant to her by the U. States, and never

dissented from same or put in a claim thereto under any act of Congress.   5.  The patent given in evidence by the defendant, together with the chain of title under Felicite Marly, shows a legal estate out of Jno. B. Marly, and his heirs and assigns.   The court is here referred to the case of Wilcox vs. lessee of McConell, and to the case of Bagnell vs. Brodwick, both decided at the last session of the S. Court of the U. States.

*Opinion of the Court delivered by Tompkins Judge.**

Newman brought an action of ejectment in the circuit court of St. Louis county against Lawless, who being the judge of that court, the cause was transferred to the circuit court of St. Charles county, judgment was there given against Newman, and to reverse it, he prosecutes his writ of error in this court.

The land sued for, is the spot where Lawless' house stands in the city of St. Louis, a part of block 109 : and if the fractional township, within which this land lies, were sub-divided into sections, according to the manner in which the lands of the United States are surveyed it would fall within the south east quarter of section No. 23, of township No. forty-five north of Range No. seven, east of the 5th principal meridian.

Newman derived his title to this land or lot from John Baptiste Marly, a part of whose legal representatives were Newman's vendors; and it lies west of fourth street, which separates it from the lot of Louis Delille.   It was proved that Marly, who died in 1806, had before the year 1800, built a barn on it and also inclosed and cultivated it.   Marly retained possession till his death, residing all the time on second street in St. Louis.   Some years after his death, his widow laid in a claim for this lot, before the recorder of land titles for the territory of Missouri.   At that time, the Recorder had succeeded to all the powers and duties conferred and imposed on the board of commissioners, appointed in pursuance of the act of Congress of the 2nd of March 1805, for the purpose of ascertaining the titles of persons claiming

*McGirk Judge not sitting.

lands in the territory, under any French or Spanish grant. The application is in these words, viz: "Widow Marly to Frederick Bates, Recorder of land titles within and for the 'Territory of Missouri. Sir: please to take notice, that I 'claim a lot in St. Louis, of 120 by one hundred and fifty 'feet, back of Louis Delille, as a barn lot, the same having 'been owned by my husband, from a number of years to 'the present day." Signed, "Felicite Veuve Marly."

The claim was confirmed, and the patent issued to Felicite Marly in her own name. No evidence was given that this lot was ever surveyed in the life time of John B. Marly. Two deeds, made by several representatives of the deceased Marly were given in evidence. The first of which is as follows: "Whereas we claim a piece, or tract of land, as 'the heirs of Baptiste Marly, and his wife, deceased, situate 'in the south part of the town of St. Louis, by virtue of an 'actual settlement made on said land by our ancestors, ac-'cording to the provisions of two acts of Congress; the one 'passed the 13th of June 1812, defining the rights, titles, or 'claims to town or village lots, out lots &c.; the other, pas-'sed the 12 of April 1814, granting the right of pre-emption 'to any person, or the legal representatives of any person, 'who had actually setted on any of the public lands in the 'now State of Missouri, and inhabited and cultivated the 'same, according to the provisions of an act of Congress pas-'sed the 5th of February 1813, entitled an act giving the 'right of pre-emption in the purchase of lands situate in Illi-'nois territory; and also according to the provisions of an 'act of Congress passed the 24th of April 1816, granting the 'right of pre-emption to certain settlers on the public lands, 'according to the provisions of that, and preceding acts; 'which land, so claimed by us, is claimed by virtue of a set-'tlement made by our ancestors, on or near block 109 and '78, as numbered on the map of the city of St. Louis, suppo-'sed to be on the south east quarter of section No. twenty 'three, of town No. forty-five, north of Range No. 7, east 'of the fifth principal meridian." Then follow the granting words. The second reads thus: "We, &c., do hereby for 'and in consideration of &c., give, grant, &c., unto Jonas

'Newman, all the right, claim and interest which we have 'or can have, by virtue of a settlement made by our ances- 'tors John Baptiste Marly and wife, deceased, on or near 'blocks 109 and 78, in the city of St. Louis; which land we 'claim by virtue of divers acts of Congress, and the settle- 'ment so made as aforesaid; and is supposed to be situated 'in township forty-five north, range 7 east, and on the south 'east quarter of section 238."

Lawless the defendant below, and also here, claims by title derived from Felicite Marly, widow of John Baptiste Marly, deceased. The patent recites, that whereas Felicite Marly, widow of John Baptiste Marly, has deposited in the general land office, a certificate number one thousand one hundred and fifty, of the Recorder of land titles at St. Louis Missouri, whereby it appears, that in pursuance of the several acts of Congress for the adjustment, of titles and claims to lands, the said Felicite Marly, widow of Baptiste Marly, has been confirmed in her claim to a lot of land in St. Louis Missouri, containing one hundred and twenty feet in front by one hundred and fifty feet in depth, French measure, &c. there is therefore granted to the said Felicite Marly, widow &c. and her heirs, the lot of land above described. Felicite Marly sold to Thomas F. Riddick, and he to Alexander Stewart, and the heirs of Alexander Stewart to Thomas Biddle, in trust for Virginia Lawless, wife of the defendant. This chain of title has been carried because the defendant contended that the action was to have been brought against his wife, the title having vested. This was settled; it was once own before this court, the same point was decidedly Lawless, then plaintiff in error. It was first allowed and argued, the judges being present and concurring, and I do know, that as much was then said on the subject as any one of the judges thought it deserved. I have heard nothing in the last argument to change my opinion, and if I had, I would not now presume to disturb a decision made by a full court; this argument being addressed to a court composed of a very only of the judges. See the point decided pg. 3 &c, at the Cole volume of Missouri decisions. On the motion of Lawless the defendant in error, the court gave these instructions to wit:

1st. If in the deeds given in evidence by the plaintiff from the heirs of Baptiste Marly to the plaintiff, the jury, on inspecting the same, shall not find therein a description of the premise, in the declaration mentioned and described, they ought to find for the defendant.

2nd. If the jury shall be of opinion, that in the above deed from the heirs of Baptiste Marly to the plaintiff, the premises in the declaration mentioned, are not described, they ought to disregard all parol, or other evidence, to explain any doubt or ambiguity, apparent or patent, on the face of those deeds respecting the premises conveyed or intended to be conveyed.

3rd. If the jury shall be of opinion that it has not been satisfactorily proved by the plaintiff, that previous to the 20th of December 1803, a town lot, out lot, or common field lot existed, on, or within the premises in the declaration mentioned, they shall find for the defendant.

5th. If the jury shall be of opinion that Baptiste Marly did not, previous to the 20th of December 1803, occupy, by himself or tenant, and possess the premises in the declaration mentioned and described, by and under the French or Spanish government, as a town lot, out lot, or common field lot, they shall find for the defendant.

12th. If the jury shall be of opinion, that it has not been satisfactorily proved by the plaintiff, that Baptiste Marly claimed the premises, in the declaration mentioned, from the French or Spanish Government, or from the American Government, they shall find for the defendant.

13th. That no evidence whatever has been offered, or given, to establish a title in Baptiste Marly to the premises in the declaration mentioned, under any pre-emption law, or law of the United States, granting land by virtue of settlement thereon.

The plaintiff moved for a new trial because the jury found contrary to evidence; against the weight of evidence; against the law; and against the instructions of the court. This motion was overruled.

The errors assigned are general, and that the court misinstructed the jury; and the first and most material inquiry

will be, did the plaintiff give any evidence, which would entitle John Baptiste Marly, or his legal representatives, to recover in this action?

By the first section of the act of Congress of the 13th of June 1812, it is provided, that the rights, titles, and claims, to town or village lots, out lots, common field lots, and commons, in, adjoining, and belonging to, the several towns or villages of Portage Des Sioux, St. Charles, St. Louis, and others in the territory of Missouri, which lots have been inhabited, cultivated, or possessed, prior to the 20th of December 1803, shall be, and the same are hereby, confirmed to the inhabitants of the respective towns or villages aforesaid, according to their several right or rights thereto.

By the third section of the same act, it is provided, that every claim to a donation of land in the said territory, in virtue of settlement and cultivation, which is embraced by the report of the commissioners transmitted to the Secretary of the Treasury, and which shall, by the said report, appear not to have been confirmed, merely because permission, by the proper Spanish officer, to settle, has not been duly proven; or because the tract claimed, although inhabited, was not cultivated on the 20th of December, 1803, or not to have been confirmed on account of both of these causes; the same shall be confirmed, in case it shall appear that the tract so claimed was inhabited by the claimant, or some one for his use, prior to the 20th of December, 1803, as aforesaid &c. By the act of 18th of April 1814, still greater indulgence was given to those claiming lands, not embraced within the description of village or town lots, out lots, or common fields; and the second section of that act, provides that every person claiming lands within the said territory, by right of donation under any former laws, whose claims are contained in the report of any of the Boards of Commissioners, made, or hereafter to be made, under existing laws, and which claims shall appear by the said report not to have been confirmed, merely because the tracts claimed were not inhabited on the 20th day of December, 1803, every such person shall be, and the same hereby is confirmed, in his claim or claims, and by the fifth section of the same

act, it is further provided, that "every person, and the legal representative of every person, who has actually inhabited and cultivated a tract of land lying in the territory of Missouri, which tract is not rightfully claimed by any other person, and who shall not have removed from the said territory, shall be entitled to a right of pre-emption in the purchase thereof, under the same restrictions, conditions, provisions and regulations, in every respect, as are directed in the act giving the right of pre-emption in the purchase of lands, to certain settlers in Illinois territory, passed 5th February, in the year 1813.

The second section of this last mentioned act of the 5th of February, 1813, requires every person claiming a preference in becoming the purchaser of a tract of land in virtue of this act, to make known his claim to the Register of the land office of the district in which the land may lie, by delivering a notice in writing wherein he shall particularly designate the quarter section which he claims, and in every case where it shall appear to the satisfaction of the Register and Receiver of the land office, that any person who has delivered this notice of claim is entitled, according to the provisions of this act, to a preference in becoming the purchaser of a quarter section of land, such person so entitled, shall have a right to enter the same with the Register of the land office on producing his receipt from the receiver of public monies, &c. provided, that all the lands to be sold under this act, shall be entered with the Register, at least two weeks before the time of the commencement of the public sales.

The public sales of land in the district, where the contested land lies, took place nearly twenty years before the trial of this cause in the circuit court, and not one word of evidence appears on the record, to show even a notice to the Register, of the claim either of John Baptiste Marly, or of his legal representatives, much less of the allowance of that claim by the register and receiver, and the payment of the price of the land, without which last act, the two first would have been of no avail. The act of the 24th of April 1816, gives no relief to negligence of this kind, for it makes no change in the act of 1813, as to the necessity of notice to

the register and receiver, and lastly of the payment of the price of the land.— No longer embarrassed then with the claim of the plaintiff under the pre emption laws, I will proceed to the consideration of the other laws by virtue of which he claims as vendee of the heirs of John Baptiste Marly.

Before proceeding to the examination of the other laws relied on, it may be well to premise that by the 8th section of the act of 13th of June 1812. the recorder succeeded to the powers and duties of the board of commissioner, and that by the fifth section of the act of the 2nd March 1805, this board or a majority of them, had power to hear and decide, in a summary manner, all matters respecting such claims, also to administer oaths and compel the attendance of witnesses, and examine them, and such other testimony as might be adduced; to demand and obtain from the proper officers all public records, in which grants of lands, warrants or order of survey, or any other evidence of claim to land derived either from the French or Spanish governments, may have been recorded; to take transcripts of such records, or any part thereof; to have access to all other records of a public nature relative to the granting, sale, transfer, or titles of lands within his district, and *decide according to justice and equity on all claims filed.*

The evidence that Newman gives of the title of his vendors is this, that Felicite Marly filed a claim for this land in her own right, and that the Recorder acting under the authority of the law just above recited, decided that it was her property, and it is contended, that she being the widow of John B. Marly, this adjudication of the recorder inures to the benefit of the heirs of the deceased J. B. Marly. The case of Strother vs. Lucas has been twice before the Supreme Court of the United States, and each time it has been decided that the confirmation (that is to say, the adjudication of the board of Commissioners) inures to the benefit of the confirmee, and not to that of any grantee of the French or Spanish Government, from whom such confirmee might have derived title, whether mediately or immediately. See 6 Peters, p. 772, and 12 Peters 458.

In the first case, or rather the first time this case was before the Supreme Court, the district court had instructed the jury, that if they found from the evidence, that the two confirmations to Auguste Chouteau, given in evidence by the plaintiff in this case, are for the same land, and include all the premises in the declaration mentioned, the plaintiff cannot recover in this action. Chouteau was not the grantee of the Spanish Government, but claimed the land as vendee, in perhaps the fourth or fifth degree from the grantee of the crown of Spain.

The Supreme Court decided that the instruction was correctly given. The decision of that court, on the construction of an act of Congress, is obligatory on this; and if the law of the land did not make it so, the reason and justice of the case would. More than fifteen years before this case was first in the Supreme Court of the United States, the superior court of the Territory had made the same decision on the construction of the acts of Congress for ascertaining and adjusting land claims in the territory of Missouri. The decision of this last mentioned court, though not obligatory on this, is of not less authority than the former. The judges of the territorial court decided at a time when, and in a country where, almost every individual member of the community was deeply interested in understanding the force and effect of these acts of Congress. It became the duty of Congress, immediately on the cession of the territory by France, to provide for speedily ascertaining and adjusting all private claims to lands in the ceded territory; and it was equally the interest of the United States that these claims should be ascertained and adjusted, in order that the lands belonging to the public might be brought into market for the benefit of the Treasury. For the purpose of ascertaining and adjusting these private claims, a board of commissioners had been appointed as early as 1805, and by the fourth section of the act of 2nd March, of that year, it was provided, that all persons claiming lands by virtue of any legal French or Spanish grant, made and completed before the first day of October, 1800, might, and those claiming by virtue of the two first sections of that act, or by virtue of any

T

MAY TERM
1840.

Newman
vs.
Lawless.

grant or incomplete title bearing date subsequent to the 1st of October 1800, were required to deliver to the recorder of land titles, a notice, in writing, stating the nature and extent of their claims, together with a plat of the tract or tracts claimed; and the consequence of neglecting to deliver such notice, &c., was a forfeiture of all the advantages offered to such claimants by the provisions of that act. By this act claimants were allowed till the 1st day of March, 1806, to file their claims.

Several acts were subsequently passed extending the time for filing their claims, and granting other indulgences. But such was the sullen indifference of the claimants, that, when Congress determined no longer to defray the expense of maintaining a board of commissioners, much remained to be done towards ascertaining the claims which the Congress itself thought ought to be confirmed. Therefore the act of 13th of June 1012, was passed, at the suggestion, probably, of some, or all of the commissioners of the board.— For the dates show that Missouri then had no delegate in Congress. The terms used in confirming tracts of land, in the acts of Congress of 13th June 1812, and of the 12 of April, 1814, are equally as strong as those used in the act of 1812, confirming town or village lots, out lots, and common field lots. and commons. There is found this only difference, that the town or village lots, out lots, common field lots, and commons, being in legal contemplation, as well as in reality, already ascertained by survey, they were confirmed to the inhabitants of the respective towns or village, enumerated in the act, according to their several rights in common thereto, and whether they filed a claim or not, no forfeiture took place; whereas those who had a claim to a tract of land which was neither town nor village lot, out lot, common field lot, nor commons, in, adjoining, and belonging to, the several towns or villages enumerated in the act, were required to file their claims by a given day, otherwise such claimants forfeited all the advantages accruing from these acts of Congress. The act of 13th June 1812, presumes that in the enumerated villages, there will be property not rightfully appropriated or claimed, and all such is

reserved for the support of schools, with the exception of such as the President of the United States might think proper to reserve for military purposes. The policy of the law then as much required the claimants of town or village lots, out lots, and common field lots, to come in and establish, before the recorder, their several claims, as it required those who claimed by any incomplete French or Spanish grant, or as a donation, by virtue of settlement or cultivation.— But the law had neglected to annex the penalty of forfeture .of all the benefits of the act, to the neglect of this duty.— The claimant then who went forward before the recorder and proved his right under the act of 1812, to a town or village lot, out lot, or common field lot, had a good title against all persons who could not produce a complete French .or Spanish grant, or show title by a confirmation of a board .of Commissioners.

The policy of the law required that those lots which had not been inhabited. cultivated, or possessed, prior to the 20th day of December, 1803, should be appropriated to the support of schools, with the exception of such only as the President of the United States might think proper to reserve, for military purposes; and that policy also required, that all the other lands in the ceded territory, should be offered for sale as soon as convenient, with the exception of such as was rightfully claimed by individuals. There can be no reason then, why the action of the recorder on a lot claimed by one of the inhabitants for a town or village lot, should not, if the claim be confirmed, avail the claimant as much as his confirmation of an incomplete French or Spanish grant, or his confirmation of a tract of land claimed as a donation in virtue of any of the acts of Congress. The claim of those deriving title to the land in dispute then under Felicite Marly, whether it be town or village lot, out lot, common field lot, or a tract of land claimed as a donation on account of settlement or cultivation is, in my opinion, good against every person who cannot produce either a good title from the French or Spanish government, or a prior confirmation by a board of commissioners. But there is no evidence on the record that the land in dis-

pute was on the 20th day of December, 1803, either a village lot, out lot, or common field lot. A lot in popular language, when real property is the subject matter of discourse, is a parcel of land designated by metes and bounds; and in the contemplation of the acts of Congress, which have been reviewed, it is a parcel of ground surveyed and marked out under the authority, either of the crown of France, or of that of Spain. In the case of Waddingham vs. Gamble p. 468 of the 4th vol. of Missouri decisions it appeared on the record, that common field lots were surveyed and corners established by public authority, and that all these matters were registered in a book by authority of law. It cannot then be presumed that if there ever had been, in the year 1803, a fourth street in St. Louis, some record of it would not be found. Mr. Bird, in a written argument furnished to this court says. "after the defendant had proved by the 'acts of the general government and its officers, by the pro- 'ceedings before the said recorder, and by said patent, that 'the lot in question was a town lot, and was in 1814, bound- 'ed by a street, he then procures several witnesses, with 'bad memory, to testify to what is abundently contradicted 'by the history of the settlement of this town, by other wit- 'nesses, by public documents, and could be easily disproved 'by the official acts of Marie P. Leduc, the strongest witness 'for the defendant, namely, that where the defendant now 'resides, was in Spanish times, no part of the town of St. 'Louis, that fourth street was first laid out in 1820 or there- 'abouts."

The recorders certificate, dated 1st January, 1814, states, that the lot was bounded east by a street. If, indeed, the recital of the eastern boundary line of this lot by the recorder, in his certificate of confirmation, be evidence not to be rebutted, or in any manner disproved, which I believe no court ever yet decided in such a case, it cannot be urged as evidence that a street existed there anterior to the date of the certificate. The insertion of the street as the eastern limit, appears to be the gratuitous act of the recorder; nothing of the existence of the street appears either in the widow's application, or in the testimony of the witness examined;

and one street alone existing on the east side of the lot, is slender proof that it is a town or village lot. The witnesses tell us there were no cross streets. The patent dated 14th of March 1839, calls for one street on the east and another on the south. It is certain that the maker of the patent had no official information of the boundaries of this lot, other than the proceedings of the recorder, and even the recorders proceedings did not conduct him back further than 1814. The boundaries then given to the lot by the patent on the 14th day of March, 1839, and the eastern extremity, as designated by the recorder in his proceedings on that subject on the first day of January, 1814, are no proof that on the 30th day of December, 1803, that ground, lying west of fourth street, and north of Poplar street, so called in the patent, was divided into town or village lots, and constituted a part of the village of St. Louis. To prove then the existence or non existence of a fourth street, we are reduced to the necessity of adverting to oral testimony, to which as the defendant did not object as inadmissible, because the absence of better evidence was not accounted for, this court can now make no objection.

Three of the plaintiffs witnesses speak of fourth street, viz Antoine Smith, Louis Delille and Michal Marly, Smith says: "the lot lay on the west side of fourth street and op- 'posite the lot of Mr. Delille, which is on the east side of 'what is now called fourth street: Cant say how large the 'inclosure about the lot was. The inclosure extended back 'to within the about 30 feet of Mr. Chouteau's fence. There 'was a space between the inclosure (where fourth street now 'is) and Delille's lot." Louis Delille the second of the witnesses last above mentioned says: "Marly had a lot in St. 'Louis directly west of his father's lot, between it and Chou- 'teau's land. His father owned a lot on the east side of 'fourth street." In another place he says "there was a 'street there, which was considered as a street, a good deal 'used, and we did all our hauling on it, and so did others."

The sum of what these two witnesses state, is that there was an open space betwixt the inclosure of Marly, and that of Delille; and that this open space was, at the time when

they were testifying, called fourth street.    But Michel Marly, brother to John Baptiste Marly, and who, from his testimony, appears to have made the inclosure for his deceased brother, and to have resided with him many years before his death, says that he is now sixty years old, does not know the direction of fourth street, there was no street there at that time—there were "only barns there."   This testimony appears to have been given on the first trial in the circuit court, and on the second he testifies to the same purpose, confirming the testimony of Chouteau, Paul, and Leduc, among others, witnesses of the defendant.   Chouteau testified, that he came to St. Louis, before a house was built in it, and that there never was any street, marked out in it, west of third street, before the occupation of the country by the American government.

Leduc states, that he had been a resident since 1799, and that fourth street was not marked out or surveyed, till about twenty years before the time he testified, that is to say in 1817, and Paul states, that he became a resident of St. Louis in 1809, and never heard of fourth street till he surveyed it in 1816, when Chouteau and Lucas made their addition to St. Louis.   What Mr. Bird means when he says, in his written argument before referred to, viz: that the testimony of these witnesses is abundently contradicted by the history of the settlement of the town, is not so very obvious to me, I am not informed that the history of the settlement of St. Louis is good evidence in a court of record, even if preserved in a bill of exceptions.   History is most commonly but hearsay evidence.   To what history he refers he does not tell, whether traditional or something more authentic.

But it certainly cannot be that this court can take any notice of any evidence not appearing on this record, without transgressing the longest and best established rules of proceeding in appellate courts.   The testimony given in this case raises a very strong presumption that all the land lying west of fourth street itself, was public property, when the American government took possession of the territory.—Felicite Marly got a lot granted to her with a very indefinite boundary, viz: east by a street separating it from the lot

of Louis Delille. The owner of this lot in 1816, when we are told Lucas and Chouteau made their addition to St. Louis, must have been a poor calculator if he had not known how to reconcile himself to the streets traced out two years after his title had accrued.

He was still separated from Louis Delille by a street, and that was all the recorder called for. It was quite immaterial to the owner if the street separating his lot from that of Louis Delille were twice as wide as the old streets, and certainly no injury to his property, that Poplar street came then into existence, on the southern extremity of his lot, as I before observed, it is my opinion, that none of this evidence ought to have gone to the jury, to prove that the contested property was a town or village lot, or out lot, had it been objected to; but one of the plaintiff's witnesses speaks directly as to the existence of fourth street under the government of Spain. and he says there was no fourth street, while several of the defendants witnesses testify as strongly as can be testified to a negative, saying there was no fourth street till about the year 1816. In case the contested ground be not a town or village lot, out lot &c. surveyed and marked out by authority of law under either France or Spain, the act of Congress expressly declares, that the claimants must file a notice with the recorder; and the deceased John B. Marly did not file one, nor did any one of his heirs claim in his right. but the widow claimed, and it was confirmed to her.

But had the confirmed lot been proved to be a town or village lot, I am of opinion, for reasons above given, that it was a duty of the persons claiming it, to file a notice with the recorder, and procure an adjudication or confirmation of the claim, if such person or persons, wished to avail himself, or themselves, of any benefit offered by the act of Congress of 13th of June, 1812. But neither John B. Marly, nor his heirs, having done this, and Felicite Marly having procured the lot in question to be confirmed to herself, all persons are now concluded by this adjudication, or confirmation, of the recorder, except those who may be able to produce either a complete French or Spanish grant, or

In a declaration in eject-
ment, the de-
scription of
the premises
contended for
must be such
as to enable
the jury to
identify them,
with the des-
cription con-
tained in the
deeds upon
which the
plaintiff
founds his
claim; and
other evi-
dence is inad-
missible to
identify the
premises de-
scribed in the
declaration,
with those
described in
the deed.

confirmation of the same property by the board of commis-
sioners made prior to that of the recorder of land titles.

The instructions given by the circuit court will now be
reviewed.

The first instruction given for the defendant seems to me
unobjectionable.  The plaintiff had attempted to set out the
premises contended for, and if he did not give a true descrip-
tion, such as the jury could identify with the description
contained in his deeds, the foundation of his claim, he cer-
tainly ought not to recover.

In the second, the court, at the defendants instance in-
structs the jury to disregard all parol or other evidence, in-
dependent of, and extrinsic to, the deeds which had been of-
fered by the plaintiff to explain any doubt or ambiguity, ap-
parent and patent, on the face of the deeds respecting the
premises conveyed, or intended to be conveyed.   The
words "doubt" and "apparent" used by the defendant in this
second instruction, were, I suppose, intended by him to con-
vey the same idea as the other two words with which they
are connected, viz: "ambiguity" and "patent."   If they
mean any thing else, I do not know what it is, and he has
failed to explain them.   They will then be treated as mere
verbiage.   An ambiguity patent is thus described: "when a
clause in a deed or will, or any other instrument, is so am-
biguously or defectively expressed, that a court, which has
to put a construction on the instrument, is unable to collect
the intention of the party; and in such case evidence of the
declaration of the party cannot be admitted to explain his
intention."   Whether then an ambiguity is patent or latent,
is the province of the court, and not of the jury to decide;
and the defendant ought to have called the attention of the
court to what he conceived to be the ambiguity patent, and
to have required the court to instruct the jury, that such
ambiguity could not be explained by any evidence, to be
produced by the plaintiff, dehors the deed itself.   The de-
scription of the property is sufficiently vague.   But if the
plaintiff was content to take it on such descrption, the laws
referred to in the deeds show that the evidence of the ven-
dors title, if any is to be found, in the case of a right of pre-

It is error
in the circuit
court to give
instructions
to the jury
that involve
questions of
law; there-
fore, where,
as in this case
the court in-
structed the
jury, that
they were to
disregard all
evidence to
explain any
ambiguity pa.

emption, in the registers office of the district where the land lay; and in case it be a town or village lot, out lot, common field lot, or land claimed by right of donation under the second section of the act of 12th of April 1814, in the office of the recorder of land titles at St. Louis. The United States have provided whenever a claim is confirmed, whether by the recorder or by the register and receiver of the land office, that it shall be sufficiently described to ascertain its locality. This instruction was clearly wrong, it being no part of the business of a jury to ascertain what is an ambiguity patent in a deed. The third instruction seems to have been framed under the belief, that the contested property, had it been proved to have been a town or village lot, out lot, or common field lot, on the 20th day of December, 1803, would have been confirmed to John Baptiste Marly and his legal representatives, by the 1st section of the act of 13th of June 1812, by which it may be recollected that the rights, titles, and claims to such lots, were confirmed to the inhabitants of the several towns or villages, according to their several rights; and it was the intention of the defendant to say, that, although, if the contested property were proved to be a town lot, out lot, or common field lot, the plaintiff might succeed in his case, yet, if the land were either a settlement right, under the second section of the act of the 12th of April, 1814, by right of donation, or under the fifth section of the last mentioned act, as a pre-emption he could not succeed. In this view, the instruction was in my opinion correctly given. For neither John Baptiste Marly nor the vendors his heirs, had filed a notice with the recorder, that this land was claimed by right of donation under the second section of the act of 12 of April 1814, nor did it appear in evidence that this land had ever been adjudged to them by the register and receiver of the land district where it lay, under the 5th section of the same act as a pre-emption right. But I have before given it as my opinion that even in the case of a town or village lot, out lot, or common field lot, the jurisdiction of the recorder still continued, and that it was a part of his duty, under the first section of the act of 13th of June, 1812, to ascertain to whom those lots, out lots

MAY TERM
1840.

Newman
vs.
Lawless.

tent on the face of the deed, the Supreme court held such instruction to be erroneous, as it was the province of the court, and not of the jury, to decide whether the ambiguity was patent or latent. The party should have called the attention of the court to what he conceived to be the ambiguity patent and required the court to instruct the jury, that such ambiguity could not be explained by any evidence dehors the deed.

Plaintiff claimed under one M. who, it was proved, prior to 20th Dec. 1803, had enclosed and cultivated the land in controversy; and, in support of his claim, relied upon the acts of Congress of 13 June, 1812, "mak-

MAY TERM 1840

Newman
vs.
Lawless.

ng further provision for settling the claims to land in the territory of Missouri": also the acts of April 12, 1814, and April 24, 1816, granting pre-emption rights in certain cases. The defendant claimed under a confirmation, by the recorder of land titles, to the widow of said M. Held: that as the plaintiff had failed to prove that the land, in controversy, was either a town or village lot, out lot, common field lot, or commons, within the provisions of the act of June 13, 1812, and had shown no compliance with the said pre-emption acts, nor any grant from either the Spanish or French governments, or confirmation by a board of commissioners, he could not prevail against the defendant,

&c. belonged at that time, and that his decision, on the right of property in one of these lots, was as conclusive as his decision on a claim made to land by right of donation under the 2nd section of the act of 12th of April, 1814. The third instruction then, was, in my opinion, wrong only in being too narrow: that is, the defendant committed error against himself; and of this the plaintiff has no right to complain.

The fifth instruction, was in my opinion, incorrectly given. John Baptiste Marly might, if the property here in dispute had been neither town nor village lot &c. in 1803, still have claimed it by right of donation under the 2nd section of the act of 2nd April, 1814, and as before observed, it appears very satisfactorily to me, on this record, that both the contested land, and other land adjoining, was a part of the public domain at that time. The same observation may be made of the 12th instruction as of the third. I can see no reason the jury should be told by the court, that if the plaintiffs had not proved that Marly claimed the premises in the declaration mentioned, either from the French or Spanish or American government, they must find for the defendant. The plaintiff pretended to set up no grant either by France or Spain, and depended solely on the provisions made by the several acts of Congress, and therefore ought to have claimed from the United States (or from the American government as the defendant has it) through the recorder of land titles, the agent appointed by law for the purpose of receiving such claims, and deciding on their validity. No injury is however done to the plaintiff by this surplussage in the 12th instruction.

Having before given my opinion that the plaintiff had not produced any evidence of title in his vendors to the contested property, it becomes useless to examine the 13th instruction. If ever a good reason existed why a jury should find a verdict for a defendant in an action of ejectment, it must exist when the plaintiff gives no evidence to sustain his case. The court committed then no error on the score of evidence in refusing to allow the plaintiff a new trial. But the defendant succeeded in procuring from the court a very improper instruction to the jury viz: that they must disregard all

evidence offered by the plaintiff to explain any ambiguity patent on the face of the deeds given in evidence, without telling the jury in what that ambiguity patent consisted, and as I believe when no such ambiguity existed in the deeds offered in evidence by the plaintiff. Had the plaintiff offered any evidence of title in himself from which the jury might by possibility have found a verdict for him. his right to a new trial would have been undoubted. But according to the evidence in the record, he relies on the bounty extended to the inhabitants of the ceded territory in the several acts of Congress above enumerated. Congress, when they confer a favor have an indisputable right to confer it on their own terms. The recorder was their agent, appointed for the special purpose of deciding not only who was on the 20th day of December, 1803, such an inhabitant as was entitled by the operation of the several acts of Congress to a town or village lot, out lot, or common field lot, or a tract of land by right of donation, but he was also their agent appointed to decide in whom the property in such lot, or tract of land, vested at the time of the application made to him for the confirmation of such property. Felicite Marly applied to him, claiming the property, and he confirmed it to her, that is, he decided it was her property, and his decision concludes all persons who cannot show either a grant from France or Spain, or a prior confirmation by the board of commissioners.

Shall then this judgment be reversed because of the wrong instructions procured by the defendant from the court, and the cause remanded to the circuit court in order to allow the plaintiff to search for evidence of a grant from France or Spain, or for a prior confirmation by a board of commissioners? Had the crown of France or Spain ever made a grant of this land to the plaintiffs vendors, it is not to be presumed that he would have rested his claim on the acts of Congress passed for the benefit of such as had no grants, and if it had ever been confirmed to those under whom the plaintiff claims, by a board of commissioners, we cannot presume that the claim would have attempted to be sustained on the construction of the confirmation of the recorder to

*Margin notes:*

MAY TERM 1840.

Newman vs, Lawless.

whose confirmation concluded all persons not able to show a complete Spanish or French grant, or a prior confirmation by a board of commissioners, or bring themselves within the said acts of Congress.

The judgment of the circuit court will not be reversed, on account of erroneous instructions given, where the party complaining has shown no right of action.

MAY TERM 1840.

Newman
vs.
Lawless.

Felicite Marly. The plaintiff then having introduced no evidence calculated to establish any right to this land, either in himself, or in those under whom he claims, it is my opinion that it is improper to reverse this judgment because the circuit court gave erroneous instructions to the jury. To reverse a judgment and remand a cause lo the circuit court under such circumstances would be holding out an inducement to the plaintiff to use improper means to procure testimony to sustain his case. The judgment of the circuit court ought then in my opinion to be affirmed. It being also the opinion of Judge Napton that this judgment ought to be affirmed, it is accordingly affirmed.

*Separate opinion of Napton Judge.*

I concur in affirming the judgment of the circuit court, on the ground that there is no evidence on the record of so decisive a character that Marle's inclosure was a village lot, as would require this court to set aside the verdict of the jury. I do not concur in so much of Judge Tompkins opinion as considers the claimants under the act of 13th June 1812 under the necessity of taking further steps before the recorder for the purpose of perfecting their titles.