## STEAMBOAT RARITAN vs. POLLARD.

The lien given by our statute to certain claims against a steamboat, does not extend to claims arising out of this State against boats not engaged in navigating the waters of this State, so as to attach on the arrival of such boats in this State.

APPEAL from the St. Louis Court of Common Pleas.

CROCKETT & BRIGGS, *for Appellant, insist:*

That the verdict was against law and the evidence; that the instructions asked for, on the part of the boat were improperly refused; and that a new trial should have been granted.

SPALDING & TIFFANY, *for Appellee, insist:*

1st. The court did not err in refusing the instructions asked by defendant. They are both bas-ed upon the assumption, that a cause of action that accrued beyond the limits of the State of Mis-souri, is not embraced in our acts giving liens on boats and vessels. The converse of that propo-sition is maintained by the appellee, to wit:

*That any cause of action enumerated in the acts of March 19, 1835, entitled, "An act to provide for the collection of demands against boats and vessels," and of February 12, 1839, supplementary to the foregoing, is a lien on boats, notwithstanding it may have accrued out of the State of Missouri.* Rev. Code of 1835, p. 102; Acts of 1838-9, p. 13; Story's Conflict of Laws, p. 233, sec. 280; p. 246, sec. 296; p. 267-8, sec. 322; p. 335-6, sec. 402; 8 Mart. Rep., 95, was of a lien of vendor

according to laws of Louisiana, which vendor lived in England, and by the laws there, the claim was no lien. 5 Mo. Rep. 256; Conflict of Laws, p. 467, sec. 556; p. 477, sec. 571; p. 481-2, sec. 575.

The principles deduced from these authorities, are,

1st. By the act of 1835, the boat was made a *quasi corporation* for the purposes of suit, under that act, by foreigners as well as citizens, on the general doctrine which is true without exception, that all remedies for the collection of debts, are open alike to strangers and citizens, where the local law makes no distinction or limitation in terms.

2nd. The act of 12th Feb., 1839, is the first act creating liens at all, *and that act makes all the causes of action suable under the former act, liens;* so that, if a cause of action accrued out of this State, could be prosecuted under the first act, it was made a *lien* by the terms of the second act.

3rd. That where the cause of action accrued abroad, we are, in the absence of proof, to presume it to be a lien, throwing the burdens on the defendant, the boat, to show that it was not a lien where it accrued.

2nd. Public policy requires such a construction of these acts, as will give liens to the enumerated claims, which have accrued out of the State of Missouri.

1st. The States are not foreign nations, and nearly every boat, navigating these rivers, runs through different States and jurisdictions every trip.

2nd. The difficulty and confusion of a contrary doctrine, would be immense, as it would lead to apportioning contracts and wages, so as to ascertain what part would be recoverable here, and what accrued without the State.

3rd. It makes an unreasonable and unconstitutional distinction between our own citizens and those of our sister States. Constitution of U. States, art. 4, sec. 2.

3rd. The true mode of considering this matter, is that our statutes create a *remedy*, and it is well settled that when a suit is brought, the right is enforced, according to the *remedy* of the place where suit is brought. The remedy here, in Missouri, on such demands against boats, is the arrest of the boats by name, and subjecting them to sale, and application of the proceeds in a certain order. It is like the case of insolvency or administration here, where the fund would be distributed according to *our laws*, and not according to the laws elsewhere. The boat liens are made such, for the purposes of the suit, are a part of the remedy, and of course have no effect elsewhere, if accrued out of this State.

4th. A lien is not always created by contract, nor is it always based on contract; witness the liens for torts in our act, which shows that all the liens there created, are made such by the statute, *proprio vigore*, and not in any other way.

5th. As to contract with Pollard. It is too late to demur, because it is not set out in the complaint; and it does not prevent the lien's attaching. It is no security to Pollard. McCloy would have been bound if that contract had not been made.

6th. Damages found are not too large.

Scott, J., *delivered the opinion of the Court.*

This was a proceeding against the steamboat Raritan, by the appellee Pollard, for services rendered said boat, as clerk. Pollard obtained judgment, from which the boat appealed.

There was evidence given tending to show, that services were rendered by Pollard as clerk, and the duration and value of those services. It appeared that the boat, during the time the services were performed, was employed in navigating the Ohio river; and the question in the cause is, whether a proceeding *in rem*, will lie against a boat not engaged in

navigating the waters of this State, there being no evidence that a lien is given, or that such a proceeding is allowable by the laws of the State in which the contract was made and the services were rendered.

It is an unquestionable principle, that the law of the place in which suit is brought on a contract, must determine the remedy to be pursued, in order to enforce it. We have a general remedy open to all, for an enforcement of contracts. Commercial considerations have induced the General Assembly, to give an additional remedy to those having demands of a particular character against steamboats navigating the waters of this State. It is not seen on what principle we can extend this remedy to contracts not made in this State, and to vessels not employed in our navigable waters. If the law of the place of contract did not give the remedy, to give it here to a single creditor, would be unjust to other creditors, as they might thereby be deprived of the means of obtaining satisfaction of their demands. Steamboat Rover vs. Stiles, 5 Black., 483.

We cannot take judicial notice of laws of other States. The existence of those laws, is a matter of fact, and is to be proved like other facts.— We presume that upon common law questions, the common law of a sister State, is similar to that of our own, and when there is not proof of the foreign law, regulating the subject of controversy, our courts must necessarily be governed by our own law. But he who seeks to obtain an advantage or claims a right under a foreign law, in suits in our courts, must show the existence of that law. It cannot surely be necessary for him who defends, to show that there is no such law. These are obvious principles and need no authorities to sustain them.

There is no force in the objection, that a denial of the remedy in case of contracts made out of the State, would lead to their apportionment, as the vessel in the same voyage, might be used partly in the waters of this State, and partly in those of another. Where a contract is made with those navigating the waters of this State, it would be no reason for denying the remedy against a vessel, that in the same voyage, she was employed on waters not within this State. Although so employed, she would not the less be a boat navigating the waters of this State. If the adoption of this course by the court, deprived a party of all remedy, we might pause before we could give it our sanction, but as he has clearly another remedy and as it might be productive of great hardship to subject a vessel to this remedy, accidentally found in our ports, in the absence of most of those who may be interested in her, we feel ourselves compelled to deny the remedy under the circumstances of this case.

38

This matter may be viewed in another light. Our law, as it were, personifies a steamboat. For particular purposes, and under particular circumstances, it gives it the capacity to contract debts and subjects it as a person to suits for the recovery of those debts. As the instances and circumstances under which this may be done, are enumerated, on what principle can we enlarge the capacity of the boat, and extend it to a state of circumstances not warranted by the law? The occurrence of cases of this kind, was so probable, that it could not have been overlooked by the General Assembly, and the omission to extend the remedy to them, must have been intentional.

The other Judges concurring, the judgment will be reversed.

SPALDING, *for Appellant, insists :*