HARRIS (GIBSON v.). See Case No. 5,396.

## Case No. 6,121.

### HARRIS et al. v. The HENRIETTA.

[Newb. 284.] [1]

District Court, D. Missouri. March, 1856.

MARITIME LIEN — STATE LEGISLATION — SEIZURE AND SALE OF VESSELS UNDER STATE LAW—EFFECT OF.

1. The admiralty and maritime law of the United States, except where it is changed by act of congress, is as much the law of the United States as if it had been formally enacted word for word in a statute.

2. The laws of the United States "are the supreme laws," and cannot be changed or altered, modified or repealed by state enactments.
[Cited in The Ann, 8 Fed. 927.]

3. No right or privilege given or secured by the laws of the United States, can be abrogated, displaced or superseded by state enactments.

4. A lien given by the maritime law is a right.

5. If a state legislature should pass an act declaring that a maritime lien should have no effect in that state, or should be postponed to liens given by the laws of that state, such enactment would have no binding force or effect.

6. The act of the legislature of Missouri, entitled "An act concerning boats and vessels," does not abrogate, displace, or supersede, any lien given by the general maritime law of the United States.

2 [Nowhere reported; opinion not now accessible.]

1 [Reported by John S. Newberry, Esq.]

7. A seizure and sale under the Missouri "act concerning boats and vessels," does not divest a lien given by the general maritime law.
[Applied in Ashbrook v. The Golden Gate, Case No. 574. Cited in The N. W. Thomas, Id. 10,386.]
[See, contra, Auther v. The Atlantic, Case No. 668.]

In admiralty.

Hudson & Thomas, for libelants.
E. L. Edwards, for the Henrietta.

WELLS, District Judge. This is a suit in admiralty, brought by the libelants against the steamer Henrietta, Cyrus Mathews claiming as owner. The facts of the case are agreed upon by the libelants and the claimants, and are as follows:

The counsel for the respective parties agree that the following facts shall be admitted on the hearing of this cause, viz.: (1) That plaintiffs were copartners as alleged in their libel, and were residents of Illinois, as stated in said libel. (2) That the stores and supplies mentioned in said libel, and the amounts attached, were furnished to said boat as stated therein: that the same were necessary supplies for said boat, and were furnished before said boat was seized by said sheriff, and that the prices are reasonable. (3) That said boat was over one hundred tons burden: that she was duly enrolled and licensed for the coasting trade: that she was owned in Missouri, and employed in navigating the Mississippi river between St. Louis, Missouri, and St. Paul, in the territory of Minnesota. For the defendant it is admitted: (1) That prior to the issuing of the writ in this case, the defendant had been attached and taken into custody by the sheriff of St. Louis county, Missouri, on various warrants issued out of the St. Louis court of common pleas, on demands which were liens on said boat, under the act of the general assembly of this state, entitled "An act concerning boats and vessels." (2) That there were judgments rendered in favor of said attaching creditors, and said boat was, under an order of said court of common pleas, sold to satisfy said lien claims: that all of said proceedings and said sale were strictly in accordance with the laws of the state of Missouri concerning boats and vessels: that at said sale, the intervener, Cyrus Mathews, became the purchaser of said boat, and received from said sheriff a bill of sale, which is herewith filed, marked A, and made a part hereof. (Signed) Hudson & Thomas, for plaintiff. E. L. Edwards, for Mathews.

It appears from the libel and exhibits, that the supplies were furnished by the libelants, at Galena, in the state of Illinois, in the months of August and September in the year 1855. It further appears, that after the supplies were furnished the boat made a trip to St. Louis, where other supplies were furnished by persons residing there, for which the boat was seized and sold as stated in the

agreed case. The sale took place in December, 1855. Afterwards this libel was filed. It does not appear where the boat was enrolled, but it does appear that the owners resided in Missouri. The only question for the consideration of the court is, whether the seizure and sale in St. Louis, in the state of Missouri, gave a title to the purchaser discharged from the previous lien of the libelants, or whether the vessel is still subject to that lien in the hands of the purchaser. The owners of the steamer resided in Missouri, and the supplies furnished by the libelants, were furnished by them at Galena, in the state of Illinois, where the libelants resided. For this purpose Galena is deemed a foreign port; the port of St. Louis, the home port. Dudley v. The Superior [Case No. 4,115]; Rule 22, Sup. Ct. U. S. When material men furnish supplies in a foreign port, they have a lien upon the vessel for the value of the supplies, by the general maritime law of the United States. That law infers that the supplies in the foreign port are furnished on the credit of the vessel. Id. When the supplies are furnished in the home port, the general maritime law gives no lien. That law infers that the supplies in such home port are furnished, not on the credit of the vessel, but on that of the owners. If there be any lien, it is given by the local law of the state. Id. In this case the lien of the libelants was at least equal, in point of dignity, and prior, in point of time, to that given by the state law, to enforce which the steamer was seized and sold in St. Louis. Upon what principle is it that this lien of libelants, given by the general maritime law of the United States, is divested? They have done no act, the doing of which could divest it. They have omitted to do no act, the not doing of which could deprive them of their lien.

In delivering the opinion of the court in the case of Rankin v. Scott, 12 Wheat. [(25 U. S.) 177], Chief Justice Marshall says: "The principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity, to a subsequent claimant." It is thought, however, and was so urged by the claimant's proctor, that the lien of the libelants was divested or annulled by the proceedings under an act of the legislature, referred to in the agreed case. When a state law creates a lien, a state law may, in some cases, divest it. But that it is not this case. The lien of the libelants is given by the general maritime law of the United States. By the constitution of the United States, congress has the exclusive right to regulate commerce with foreign nations and among the several states; and the courts of the United States are invested with the admiralty and maritime jurisdiction. The ninth section of the judiciary act of 1789 [1 Stat. 76], declares

that this admiralty and maritime jurisdiction is exclusively in the courts of the United States. By the act of congress of May 19, 1828 [4 Stat. 278], entitled "An act further to regulate process in the courts of the United States," it is provided, "that proceedings in the courts of admiralty and maritime jurisdiction shall be according to the principles, rules and usages which belong to courts of admiralty, as contradistinguished from those of common law, except so far as may have been otherwise provided for by acts of congress," &c.

It is obvious, I think, from the above statement, that the admiralty and maritime law of the United States, unless where changed by act of congress, is as much the law of these United States as if it had been formally enacted, word for word, in a statute. The laws of the United States, I need hardly say, "are the supreme laws," and cannot be changed or altered, modified or repealed by state enactments. Nor can any right or privilege given or secured by them be abrogated, displaced or superseded by such state enactments. A lien given by the maritime law is as much a right as is a mortgage or bottomry bond. It is clear, therefore, that if a state legislature should pass an act declaring that a maritime lien should have no effect in that state, or should be postponed to liens given by the laws of that state, such enactment could have no binding force or effect. Dudley v. The Superior [Case No. 4,115], decision of the district court of the United States for the Southern district of Ohio; The Globe [Id. 5,484], in the district court of the United States for the Northern district of New York; Bronson v. Kenzie, 1 How. [42 U. S.] 311. Under these circumstances it would require very clear and explicit language in the statute of a state to convince us that such effect was intended by the legislature. Has the legislature of Missouri passed an act by the provisions of which a lien given by the general maritime law of the United States is abrogated, displaced or superseded? I think not. In my judgment, the steamboat law referred to in the agreed case, relates wholly to liens given by that act;—to liens given by the act, and which the act could provide for taking away. I will at present, refer only to one provision of that act. But it is, I think, conclusive. The thirteenth section is as follows: "Section 13. When any boat or vessel shall be sold under the eleventh section of this act, the officer making the sale shall execute to the purchaser a bill of sale therefor, and such boat or vessel shall, in the hands of the purchaser and his assignee, be free and discharged from all previous liens and claims under this act." Here, the very act which gives the lien, declares the effect of that lien and a sale under it. That sale is to free and discharge the vessel from all previous liens and claims under that act. Now, as the lien given by the general maritime law of the United States—given in this case for supplies furnished in

Illinois—is not given by the steamboat law of Missouri, it is not affected by that law, nor is the boat freed or discharged from the lien not given by nor claimed under that law. The first section of the act (which gives the state liens), evidently confines those liens to cases where the supplies are furnished within the state. But that is not all: the whole act, and every provision in it, is limited to contracts made within the state. This is put beyond all dispute, I think, by the last case determined by the supreme court of Missouri, in regard to the steamboat law. The supreme court declares that "the statute of this state, concerning boats and vessels, is limited in its provisions to contracts made within the state, with boats used in navigating the waters of this state." And this decision, the court further declares, is made in accordance with the cases of Noble v. The St. Anthony, 12 Mo. 261, Twichel v. The Missouri, Id. 412, and The Raritan v. Pollard, 10 Mo. 583. It will be observed that the thirteenth section of the act (herein given at large), speaks of a sale made under the eleventh section of the act. I will presently show that a sale under the eleventh section is the only sale that could possibly divest a lien given either by that act or any other law. The other sales being mere sales under ordinary executions, which transfer the title of the owner, but nothing more; and if the title of the owner be incumbered, the purchaser takes the title and property with that incumbrance. It is urged, however, that the judicial proceedings (including the seizure and sale), in Missouri, under the steamboat law, transferred the vessel to the purchaser at that sale, freed and discharged from the lien of the libelants.

The lien of libelants, being one given by the general maritime law, not given by the statute of Missouri, and not arising from a contract made within the state, to declare it divested by those proceedings, would seem to be in direct contradiction to the whole scope and meaning of the act, to the express provisions of the thirteenth section in particular, and to the above quoted opinion of the supreme court of Missouri, in James v. The Pawnee, 19 Mo. 517. But there are difficulties, and they arise from decisions of the supreme court of Missouri. These decisions are made in the cases of The Raritan v. Smith, 10 Mo. 527; Finney v. The Fayette, Id. 612, and The Sea Bird v. Beehler, 12 Mo. 569. They all relate to sales under judicial proceedings. In the first cited case it appears that the sale took place in 1843, and of course was governed by the law then in force; and the case was decided, not under the act of 1845 [Rev. St. Mo. p. 180], but under that of 1835 [Id. 102], and the acts supplementary thereto. The provisions contained in the thirteenth section of the act of 1845 had not then been enacted. The provisions of that section are most important, as they expressly declare the effect of a sale, as already seen. Although the language of the opinion is somewhat general, yet it must be taken in connection with the subject it treats; and, by examining the facts it will be seen that the liens were given by the steamboat law of Missouri, and the sales were under the same law. The next case (Finney v. The Fayette, supra), was, as I understand the facts, a suit brought under the steamboat law, in St. Louis, in February, 1842, for supplies furnished in November, 1841. The boat was claimed by one Alexander, who pleaded a suit brought before a justice of the peace in Illinois, against the boat, in December, 1841, under the steamboat law of that state, a judgment obtained against the boat, and a sale in January, 1842, of the boat by a constable, at which sale Alexander became the purchaser. The process under which the boat was sold, was an execution commanding the constable "to make sale according to law, of said boat, or so much thereof as will satisfy the judgment (about $30), and all costs of suit." This sale in Illinois was held by the supreme court of Missouri to divest the previous lien acquired by Finney in Missouri. The lien of Finney arose under an amendment to the steamboat law, passed 12th February, 1839, the same as that contained in the act of 1845.

In delivering the opinion of the court, the judge says: "The case is similar in principle to that of The Raritan v. Smith [supra]. It was then determined that the rules of the maritime law, were, in proceedings against steamboats, to govern when there was a failure of statutory regulations. Maritime liens in respect to the mode in which they may be discharged, vary from other liens. A judicial sale will divest them, in whatever jurisdiction it may be decreed." This opinion is not one giving a construction to a statute of the state of Missouri; but it regards the general maritime law of the United States. And, with the greatest respect for the supreme court of Missouri, I can neither adopt the reasoning of the court, as applied to the facts, nor the conclusion at which it arrives. When a material man, having a lien, proceeds against a vessel, in an admiralty court, a writ issues to seize the vessel, and it also requires that all persons interested should be notified to appear and defend; then notice is published in a newspaper to all interested to appear. Unless the vessel is in danger of perishing, no sale is ordered until all persons interested have an opportunity to be heard. All persons interested are allowed to appear, and set up their claims to the vessel, or the proceeds of the sale of the vessel. When the vessel is sold by an order of the court, it is for the benefit of all concerned. The proceeds of the sale are paid into the registry of the court, and apportioned among all; or if the proceeds be sufficient, all are paid the full amount of their judgment. Chief Justice Marshall, in delivering the opinion of the supreme court of the United States, in the case of The Mary, 9 Cranch [13 U. S.] 126, says: "The whole world, it is said, are parties in an admiralty

cause, and therefore the whole world is bound by the decision. The reason on which the dictum stands, will determine its extent. Every person may make himself a party, and appeal from the sentence; but notice of the controversy is necessary in order to become a party, and it is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him." * * * "But those who have no interest in the vessel which could be asserted in the court of admiralty, have no notice of her seizure, and can on no principle of justice or reason be considered as parties in the cause, so far as respects the vessel." I could cite any number of cases to the effect that no judgment, or sale under a judgment, can bind any but parties or privies; and that no person is deemed a party unless he have notice actual or constructive, and that, if a person interested would not, from the nature of the proceedings, be allowed to assert his rights, then those proceedings can in no respect affect those rights. Indeed to take away his rights by such doings, would not be judicial proceedings—they would amount to a confiscation, a confiscation of his rights for the benefit of others. Mr. Justice Story, in the case of Bradstreet v. Neptune Ins. Co. [Case No: 1,793], says: "It is a rule founded in the first principles of natural justice, that a party shall have an opportunity to be heard in his defence, before his property is condemned." Judge Story further declares that if a person have not such opportunity, and yet is deprived of his rights, the proceedings are not judicial, but arbitrary edicts, deserving not the respect of any other nation, and ought to have no intrinsic credit given to them, either for their justice or truth. Had the material man in St. Louis any notice of the proceedings in Illinois? None appears in those proceedings. Could Finney have asserted his claim or had it allowed against the boat in that suit? I think clearly not. It was an ordinary suit at common law, merely using the name of the boat, instead of the owners, a warrant of seizure like a capias ad respondendum, and a judgment against the boat for some $30; an execution against the boat directing the constable to sell the same, or so much as might be necessary to satisfy the debt and costs. In such suit, Finney would have had no more right to intermeddle, than he would have had if the suit had been against the owner by name. The sale was merely a sale of the right of the owner to so much of the boat as would bring the $30 and costs. And it was of course sold, as in other cases of sales on executions, subject to all mortgages and liens then existing. On such sale there could be no money to divide among other creditors having liens. I have already shown that such proceeding is unknown to a court of admiralty.

The next case referred to above, is that of The Sea Bird v. Beehler. The plaintiff acquired a lien against the boat in St. Louis, under the steamboat law of Missouri, for supplies. After plaintiff's lien was obtained, suit was brought against the owners in Louisiana, and the boat was there seized on writ of attachment against the boat, and sold to satisfy the judgment. The supreme court held that such sale did not divest the plaintiff's lien. In my judgment there is no substantial difference between the sale in Illinois in one case and that in Louisiana in the other case. In both cases the boats were seized and sold merely to satisfy the debts of the plaintiff. No other persons, having claims, had a right to interfere; nor was any money raised by the sales to satisfy other claims. The reasoning of the court in this case, when applied to the sale in Illinois, in the previous case, clearly shows that the sale in Illinois could not divest the lien of Finney in Missouri. The court explains, that there is a great difference between the principles which govern suits and sales at common law and those in admiralty. In the maritime proceedings, it says, the sale is made for the benefit of all whom it concerned. And "this is the case under our statute as it now stands." It further says a sale under our statute concerning boats and vessels, is similar in all respects to sales under the maritime laws: "Such sales are not made for the benefit of any particular creditor, but for the benefit of all persons interested. Provision is made for the distribution of the proceeds pro rata among all who will come forward and establish their claims within a specified time." The court says it is for these reasons that the sales conclude all persons having claims. All the above is very sound law as regards proceedings in the maritime courts. But how does it comport with the sale in Illinois, which, in the previous case, was held to divest the lien in Missouri? In Illinois the sale was merely to raise $30 to pay the plaintiff's judgment, and the boat was sold for his benefit alone. There was no sale "for the benefit of all persons interested." There was no "distribution of proceeds of sale, pro rata, among all who would come forward and establish their claims." The case of The Sea Bird clearly, in my judgment, overturns the previous case of Finney v. The Fayette.

I will now proceed to show that so much of the case of The Sea Bird v. Beehler as declares that sales under the steamboat law of Missouri are like those in the admiralty court is overturned by the next case cited,—James v. The Pawnee. In the case of The Sea Bird, I have quoted the opinion of the court, that sales under the maritime law "are for the benefit of all interested." "The proceeds are divided pro rata," &c., "and this is the case under our statute, as it now stands." In the case of James v. The Pawnee, the court decides (unanimously) that a person having a claim or lien not arising from contract made within the state, cannot be allowed to inter-

vene and have his claim allowed, nor receive any part of the proceeds of sale. The statement of the case is a little obscure, but, to put the matter beyond doubt, I caused the records and proceedings in the supreme court to be examined, and there it fully appears that two complaints were filed against the Pawnee; under them writs issued, the boat was seized and sold under the provisions of the eleventh section; notice was given to creditors to appear. James, who was not one of the original plaintiffs, but who intervened for his interest, filed his claim, which was for coal furnished the boat at Memphis. The claim was allowed in the court below, on the ground that the boat was employed in navigating the waters of this state, and the claim was a lien on the boat. The supreme court reversed the judgment below solely for the reason that the provisions of the steamboat law did not apply to any contracts not made within the state. Here, then, the very foundation of all the reasoning of the court in the last cited cases, is overturned. The sales under the steamboat law are not made "for the benefit of all concerned." Claimants, whose contracts were made in another state, can receive no part of the proceeds of such sale. No provision exists for making distribution among them. Sales under the state law are not like those made by the admiralty courts. I have too high an opinion of the supreme court of Missouri, to suppose for one moment that it would hold, a creditor having a lien on a boat arising from a contract made in another state, could not be heard in a proceeding under the steamboat law, nor have his claim allowed, and yet, at the same time hold that the proceeding deprived him of his lien.

It is obvious, I think, that the previous decisions were made whilst the court entertained the opinion that claims arising on contracts made in other states, could be heard and allowed under the steamboat law in this state. The law, it seems, is now settled that such claims cannot be allowed in this state under that statute. There remains one other matter to notice under the steamboat law, where a bond is given for the return of a steamboat, and the boat is returned accordingly; the boat is not sold under an order of court for the benefit of all the creditors having claims under that act. But a judgment is rendered against the boat by name, and an execution issues, under which "the sheriff may sell such part of the boat or vessel, or her tackle, or furniture, or such interest therein as may be necessary to satisfy the judgment and costs." See section 20. This is a similar proceeding to that mentioned in the case of Finney v. The Fayette, which occurred in Illinois. No part of the steamboat law declares that such sale can divest any liens, not even those given by that act. It is not such sale as is mentioned in section 13, which refers to sales made under the eleventh section, and not to those made under the

twentieth section. The supreme court of Missouri, so far as I have noticed, makes no distinctions between the different kinds of sales under that act. But I think I have already shown, that under no principle of law or justice could such proceeding divest any lien—certainly not the lien of libelants. Yet, as far as appears from the agreed case, the sale relied upon by the claimant to divest libelant's lien, may have been of the kind just mentioned. For this reason, also, I would decide against the claim. The opinion of the court, therefore, is, that the libelants have a valid lien, not affected by the sale relied on by the claimant, and that said lien must be enforced.