VAULX *vs.* CAMPBELL, Executor, &c.

1. An instruction not predicated on the evidence in the cause is erroneous: so is an instruction which, in effect, tells the jury that they must believe the evidence.— See Bryant *vs.* Wear and Hickman, 4 Mo. Rep., 106.

2. A party must not only object, but must tender his exceptions to the opinion of the court overruling his objections.— See Shelton *vs.* Ford and Whitehill, 7 Mo. Rep., 209.

3. The judgment of the court below will not be reversed on account of erroneous instructions given, when it is apparent that the party complaining has sustained no injury thereby.— See Newman *vs.* Lawless, 6 Mo. Rep., 301; Finney et al. *vs.* Allen, 7 Mo. Rep., 419.

ERROR from Greene Circuit Court.

Winston, *for Plaintiff in Error.*

1. The court erred in permitting the declarations of the Sims' to go to the jury, such declarations being no more than hearsay evidence.

2. The court erred in giving the defendant's instruction, such instructions leaving the jury to judge of what constituted a legal title to the property.

Phelps, *for Defendant in Error.*

1. That court did not err in admitting the declarations of the young Sims' as to the ownership of the property, as they were in possession of the same.

2. That if the sons of deceased held themselves out to the world as the owners of the property, and defendant intermeddled with it by their consent, this will not render him liable as an executor *de son tort.*— 1 Com. Dig., 378, chap. 2; 1 Esp. Nisi Prius, 251; 1 Esp. Rep.

3. That plaintiff has not shown that defendant was an executor *de son tort*, and the verdict is therefore for the right party.

4. That if improper evidence was received, the court will not set aside the verdict, provided there be sufficient evidence without it to authorize the finding of the jury.— 1 Taunton, 14.

And if, on the whole, judgment is given for the right party, it ought to stand.— 1 Mo. Rep., 163, 313, 588, 746.

TOMPKINS, *J., delivered the opinion of the Court.*

Joseph Vaulx commenced an action of debt in the Circuit Court of Greene county, against John P. Campbell, and the judgment of that court being rendered against Vaulx, he brings his writ of error to this Court, in order to reverse the judgment of the Circuit Court.

The suit was brought on two single bills obligatory for $325, each made by Isham Sims, sen., deceased, and to maintain his suit the plaintiff introduced evidence to prove that Campbell, the defendant, had become liable as his executor of his own wrong by intermeddling with the property of the deceased.

After giving the bills in evidence, the plaintiff proved that Isham Sims, who executed said instrument of writing, died in the year 1835, and had never been in this part of the State, viz., Greene county; that he died possessed of ten or twelve negroes, two wagons and teams, and household and kitchen furniture, and that said property was brought here by Isham Sims and Thomas Sims, sons of the deceased; that said negroes were worth, on an average, about five hundred dollars each; that in the year 1806 or 1807, the defendant was going to the South with some negroes of his own, and young Isham Sims, son of said deceased, took the negroes of the deceased, and went with the defendant.

The witness stated, that he had a demand against the said deceased, and that the defendant gave his note for the amount, which was about forty dollars. The witness then understood that young Isham Sims had secured the defendant for it. The witness saw, with the stock of the defendant, a mare, which had been owned by said Isham Sims at the time of his death, worth about fifty dollars.

The defendant then asked the witness to state what Isham Sims, deceased, told him in his lifetime about the manner in which he came to the possession of some of said negroes; to which question the plaintiff objected, and the witness was permitted to answer the question, and the plaintiff excepted to the opinion of the court. The witness then stated that Isham Sims, the deceased, told him that he took six of those negroes from his father, without leave, in 1834 or 1835. The witness then being interrogated by the defendant, stated that the family of the said deceased did claim and use said property as their own, and exercise over it the rights of ownership by hiring, selling, &c.; that the six negroes which Isham

*Vaulx* vs. *Campbell, Executor, &c.*

Sims, the deceased, took from his father, were brought back; but that a negro woman and her two children were not brought back, and that said woman and her children were worth one thousand dollars; that Isham and Thomas Sims, sons of the deceased, called the property their own.

The plaintiff then proved, by another witness, that he saw the said negroes in the possession of young Sims; that the defendant and young Sims went off together with the negroes, and with a wagon and team which young Sims called his own, the defendant taking away some of his own negroes; that after the defendant returned, he said he could have sold the negroes better, but Sims would not allow them to be separated. The witness being asked whether the defendant meant that he or Sims could have sold the negroes better, replied, "judge for yourselves," repeating what he had before said. This took place in the year 1837. The defendant proved that young Sims exercised the rights of ownership over these negroes, and other things not thought material to notice here.

No other testimony was given in the cause by the defendant. The plaintiff then proved that young Isham Sims said that the defendant sold the negroes while he was sick, and that the tavern-keeper told him, said Sims, that he was raised up in the bed, to sign the bill of sale; that said Sims also stated to witness, that there was a difference betwixt himself and the defendant about a draft, for which the negroes, taken away by young Sims and the defendant, had been sold; that young Sims told the witness they were both interested in it, and that the defendant held it and refused to give it up, until some demands which the defendant had against young Sims were satisfied or secured; that the defendant told the witness he had some demands against said Sims, and would not surrender the draft.

On a review of this evidence, the plaintiff in the action is found to have produced no evidence against the defendant stronger than this, that the defendant was going to the South with some negroes and stock of his own, and that young Isham Sims went with him, taking along with him the negroes of the deceased, Isham Sims, his father; and that the witness saw a mare among the stock of the defendant, which had belonged to the deceased father of young Sims. But it is not even intimated that the defendant claimed the mare, and it is obvious, if young Sims did claim the mare, that he could not have kept company with the defendant without suffering the mare to run with the drove of the defendant.

The defendant, in the cross-examination of the plaintiff's witnesses, brought out some evidence which the court, contrary to the plaintiff's wish, permitted to go to the jury, and the plaintiff duly excepted to the opinion; for what good reason is not so obvious, as the defendant in that cross-examination seems to have done more to convict himself than the plaintiff had done. The second witness of the plaintiff stated, that the defendant said, after his return, that he would have sold the negroes better, or that the negroes could have been sold better, but Sims would not allow them to be separated. It is evident, from this expression, that Sims acted as master and owner in not allowing the negroes to be separated, and still it is attempted to make the defendant liable, not because he said he did sell them, but because he could have sold them better if, &c. He might also have said that he could have sold them better if they had been his property; this would

have been equally as good evidence to convict him of intermeddling with the property of the deceased, as the other. But the plaintiff introduced a witness to prove, by the declarations of Sims himself, that there was a jar betwixt plaintiff and defendant about a draft, for which the negroes taken away by Sims and the defendant were sold, and that both plaintiff and defendant were interested in said draft. No exceptions being taken to this evidence by defendant, it must pass for what it is worth. The evidence shows that Campbell, the defendant, carried to the south negroes of his own, and he might well have been interested in the draft by a sale of his own negroes.

But the defendant, after injuring himself by the cross-examination of the plaintiff's witnesses, asks the court to instruct the jury, that if they believe, from the evidence, that the defendant has made out a *prima facie* legal title to all property which belonged to Isham Sims, deceased, which came to the hands of the defendant, they must find for the defendant.

This is certainly a very exceptionable instruction; first, it appears, to me, that there was no evidence on which such an instruction could have been predicated, and this, it seems to me, the defendant's interest required him to make out; second, if there had been any such evidence, this instruction amounts, as was held in Bryan *vs.* Hickman and Wear, (4 Mo. Rep., 106,) to telling the jury they must believe that evidence. To the same purpose, see Speed *vs.* Harris, *Ibid.*, 356. To this instruction the plaintiff objected, but he did not except to the opinion of the court overruling his objection; and in Shelton *vs.* Ford et al., (7 Mo. Rep., 211,) it is decided by this Court, that "it is not sufficient to say that he objects, he must save his objection on the record by excepting to the opinion of the court in overruling his objection." I am not prepared to say that this judgment ought to have been reversed, even if this instruction had been excepted to. For, after carefully examining the plaintiff's evidence, I have not been able to find any evidence of a conversion by the defendant which ought to have induced him to hazard this suit, and I am induced to believe that the defendant asked this instruction under a mistaken apprehension of the state, both of the plaintiff's evidence and of his own, as sometimes happens in the bustle and confusion of a crowded court-house. The plaintiff, then, could sustain no injury by this mistake of the court in giving this instruction; and even if it had been excepted to, it ought not to be cause for reversing this judgment.— See Finney et al. *vs.* Allen, (7 Mo. Rep., 416,) where it is said the judgment of the Circuit Court will not be reversed on account of an erroneous instruction, when it is apparent from the record that such instruction could not have been prejudicial to the party complaining.— See also Newman *vs.* Lawless, 6 Mo. Rep., 279.

The plaintiff moved for a new trial for these reasons—

1st: Because the court erred in instructing the jury;

2d: Because the court permitted improper evidence to go to the jury;

3d: Because the verdict is against law and evidence.

First: It was shown above that the judgment ought not to be reversed, first, because the plaintiff did not, by excepting to the opinion of the court, save his objection to this instruction; and, secondly, because he could not, in any event, be

prejudiced by the instruction, as he had not given any evidence of a conversion by the defendant of the goods of the deceased.

Second: The declarations of the deceased, Isham Sims, made to the plaintiff's first witness, which the defendant drew from the witness on cross-examination, ought not to have been given in evidence. But this could do no injury to the plaintiff, who had proved nothing against the defendant.

Third: The finding of the jury, is, as it seems to me, consistent both with the law and evidence.

It is the opinion of the Court that this judgment be affirmed.