STEAMBOAT RARITAN vs. J. G. SMITH.

1. A judicial sale of a boat to satisfy a lien of any class, conveys to the purchaser a title free from the liens of every other class, superior as well as inferior.

2. A bill of exceptions concluding thus, "to which several decisions of the court, the defendant excepted at the moment," shews that the exceptions were properly taken.

APPEAL from St. Louis Court of Common Pleas.

CROCKETT & BRIGGS, *for Appellant, insist:*

1st. The evidence is not sufficient to support the appellee's claim, either as to duration of services, value of his services, or the amount as ascertained by the verdict.

2nd. The sale of the boat under law process to Jonas Newman, (defending owner,) conveyed to him a clear unembarrassed title discharged of all liens, or at all events of all liens of equal and inferior class or grade.

3rd. Smith's lien, if he had any, was discharged.

4th. These liens may well be assimilated to and regarded as tacit mortgages. If so, Smith has lost his lien on the boat. 8 Johns. R., p. 333; Buford, &c. vs. Smith, 7 Mo. R., p. 489.

In Pennsylvania it has been held that where there were various liens filed, (under the act for the benefit of mechanics, &c.,) by different mechanics and others against the same house, for work and lumber, a proceeding and sale under any one of them, will release it from the whole, and the purchaser will hold the property discharged of the other liens. Anshutz vs. McClelland, 5 Watts Rep., 48; Gorgas vs. Douglass, 6 Sergeant & Rawl., p. 512; Sergeant on Lien, p. 31, 32. For the Penn. act, see Sergeant on Lien, p. 119.

If our preceding 3d and 4th positions are good, the court erred in refusing instructions asked conformity therewith.

5th. The services of Smith were rendered on foreign waters, and exterritorially so far as our laws are concerned.

1. This appears from the evidence generally, the face of the note, the place where dated, &c.

2. But if *that fact* be not clear from the evidence and shewn positively, yet the contrary does not appear. In other words, Smith has not complied with the plain requisitions of the law of Mis-

souri by showing affirmatively (as he was bound to do,) that his services were so rendered as to locality as that the law of Missouri embraced his case, and conferred a lien on him.

The Missouri act confers partial and.shomewhat exclusive privileges on certain classes of men, who can only enjoy the benefit of laws constituting exceptions to the general rules and course of legislation, by positively and affirmatively shewing themselves entitled to the benefit and peculiar privilege. It is for them to show this affirmatively and beyond doubt. If this position be correct, its consequence is, that Smith never had a lien on the Raritan. Story's Conf. laws, p. p. 267, 268; Harrison vs. Sterry, 5 Cranch, 289, 298; Ogden vs. Sanders, 12 Wheaton, 361, 362. Act of 1838-'9, concerning boats and vessels.

SPALDING & TIFFANY, *for Appellee, insist :*

1st. The giving and refusal of instructions were not properly excepted to, and the error of the court in that respect, if any, cannot be taken notice of, on motion for a new trial.

2nd. If however the correctness of the instructions is properly before the court, then it is contended that the court did not err in giving the instruction to the jury.

3rd. The first instruction asked for defendant was properly refused, because it asks the jury to find in a certain way, if they should be of opinion that the sale of the constable was on first class claim, whereas there was no proof that they were of that class. Nor could the sale of the constable even for claims of the first class divest the lien of plaintiff, which was of the same class; at any rate under the circumstances proved, to-wit: the boat before and at the time of the sale, being in the custody of the sheriff and on this demand the constable selling with the fact known and acquiesced in by the purchaser.

4th. The second instruction of the defendant is also bad, for it assumes that the constables sold on claims of the first class. It takes that to be an established fact and so tells the jury. It also disregards the fact of this lien being levied on the boat before that sale, and the boat then being held by that levy and the sale taking place subject thereto.

5th. The only other point arising is whether the court should have granted a new trial for newly discovered evidence on Newman's affidavit. I maintain the negative.

No sufficient dilligence is shown by the affidavit, to find Johnstone, or to get testimony. And the other fact stated is that the plaintiff had made some admission as to the boat, since the trial.— This evidence did not exist at the time of the trial. If the plaintiff's evidence was needed, why was not a petition for discovery used?

SCOTT, J., *delivered the opinion of the Court.*

This was a proceeding against the Steamboat Raritan, under our statute concerning boats and vessels. The claim was for services rendered as clerk by Smith, and constituted a lien of the first class. The plaintiff recovered judgment, from which the Steamboat appealed.

On the part of the plaintiff evidence was given tending to prove the length of time the plaintiff was employed, and the value of his services. On the 7th December, 1843, the Deputy Sheriff of St. Louis county, seized the boat by virtue of a warrant of that date, and continued in possession of it until the 11th of the month, when the proceeding under which the warrant issued was dismissed and the boat was seized under

the process awarded on the complaint of the plaintiff in this case. Between the 7th and 11th of December 1843, two constables of St. Louis township attached the boat by virtue of sundry warrants, and levied on her orders of sale, under which and a great many others of a later date the boat was sold to Jonas Newman for $1250, which sum, the constables say, satisfied all the demands of the 1st and 2nd class against the boat, and a portion of the third class. The sheriff had a hand on board of the boat when she was sold, and it was announced at the time of sale by the constable, that the sheriff held her under warrants issued on demands against her.

The court gave the following instruction: "If the jury believe from the evidence that the plaintiff is entitled to recover in this suit for wages earned on board the steamboat Raritan, within six months before the commencement of this action, then the claim of said plaintiff is to be regarded as a lien of the first class on said boat, and such lien has not been divested by the proceedings before justice Carr, and the sale by the constables, or by the proceedings of the Circuit Court and the sheriff's sale, which have been given in evidence by the defendant."

The defendant asked the following instructions: "The court instructs the jury that if they believe from the evidence, that the steamboat Raritan was seized by constables Gordon and Rule, by virtue of process issued from justices of St. Louis township, which process was founded on judgments against said boat predicated upon claims due to hands or officers of said boat, for services rendered on board thereof, that by virtue of such process, she was seized by said constables and sold to the defendant, and that such seizure by the constables was prior to the seizure by the sheriff by virtue of the process iu this cause, the defendant acquired a good title to said boat discharged from the plaintiff's lien."

"That the fact that when sold by the constables as aforesad, by virtue of first class claims, the constable also sold her to the defendant under claims of the second class is immaterial, and cannot in any manner invalidate the title acquired by the defendant by virtue of such purchase."

"If the jury find from the evidence that the Raritan was seized by writs from justice Carr, based on first class claims, and seized and reduced to possession by the constable, before the seizure was made by the sheriff at the suit of the plaintiff in this cause, such seizure by the constable vested the title to the property in him so as to enable him to sell for the benefit of the creditors for whom he was acting, and for a perfect title to the purchaser, and if after such seizure and the title becoming vested in him,

the officers sold the whole boat, or more than was sufficient to pay said claims of the first class, the purchaser still gets a valid title and the injured party must look to the officers;" which were refused.

The bill of exceptions concludes with the following words : "To which several decisions of the court, the defendant by his counsel excepted at the moment."

The only question in this case is whether a judicial sale of a boat under the act of 1835, and the acts supplementary thereto, concerning boats and vessels, to satisfy a lien of any class will discharge all other liens on the same boat. This was a new subject of legislation to the General Assembly, and it was not to be excepted that a system without defects, could at once be framed. The laws on this subject were, until the late revision, embarrassing and present many complicated questions. Under this state of things the court feels itself called upon to look for a guide to that system from which the idea of proceeding against a vessel *in rem* had its origin, as we must suppose that the General Assembly in borrowing a remedy from the maratime law, would expect the courts to look to that law for principles of decision in questions not provided for by the statute. By the maratime law, seaman's wages were a lien on the vessel in which they were earned, which was preferred to all others. So bottomry bonds were liens, and the last bottomry bond constituted a lien preferred to those which had been previously executed. These liens could not be divested by a private sale, but a purchaser would take the vessel subject to them. If however a judicial sale was ordered and made, the purchaser under such sale took the vessel freed from all liens. It is true that in such cases, the proceeds of the sale were paid into court, and they were distributed among those entitled to them according to the priority of their rights. The steamboat Rover vs. Stiles, 5 Black., 483, and the authorities there cited.

Our statute gives a lien on vessels navigating the waters of this State, for debts contracted for specific purposes by those owning them. It also arranged those debts into four classes, giving to each class a priority according to its number, the highest number being the last class. If a boat is sold by virtue of law for a debt of one class, will the purchaser take it discharged of the inferior and superior class as well as those of the same class? To hold that he does not, will lead to great difficulties, and in many cases defeat the object of the law. Suppose the debts of the first and second class, exceed in amount the value of the boat, if the purchaser takes the boat subject to the lien of the inferior classes, then

his bid will be lessened to the amount of debts of those classes, and the creditors of superior classes will thus, for the sake of the inferior classes be deprived of the means of satisfying their debts. For after they have once sold the boat, it will not be contended that they can sell her again for the same debts. The same thing may happen with regard to debts of the same class. If they who first seize a boat must sell her subject to all liens of the same class with their own, their interest in the boat may be sacrificed for the benefit of those who may thereafter attach. So, selling a boat at auction, subject to prior liens, the amount of which is unknown and when there is no means provided for ascertaining them, is a sacrifice of property destructive alike to the interests of the debtor and creditor. Gorgas vs. Douglass, 6 Ser. & R., 572. It should be borne in mind in considering these questions, that a proceeding *in rem* against a boat is not the only remedy a creditor is allowed by law.— He may sue those who were owners at the time the debt was contracted, or to whom the credit was given.

It would appear from the bill of exceptions that the boat was sold under a debt of the first class.

We do not think that the bill of exceptions sustains the objection that no exceptions were taken to the giving and refusing of instructions.

The other Judges concurring, the judgment will be reversed.