## LUTA M. HARDING v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### In Banc, February 9, 1911.

**INSTRUCTION: No Objection Necessary.** It is not necessary to both object to and except to the giving or refusing of an instruction, in order to have it reviewed on appeal. All that is required is that an exception be saved. The giving or refusing of an instruction is the action or ruling of the court, and litigants are not required to object to the court's rulings, but only to except to them. [Overruling Sheets v. Iowa State Ins. Co., 226 Mo. 613.]

*Held,* by WOODSON, J., dissenting, that, unless both an objection and exception are saved to the giving or refusing of an instruction, it is not for review on appeal.

On Motion to Transfer to St. Louis Court of Appeals.

MOTION OVERRULED.

GRAVES, J.—This is a second motion for a transfer of this case from this court to the St. Louis Court of Appeals. The first motion was overruled before this term began, on the ground that there was a constitutional question involved as indicated by the record. The present motion was filed because, as counsel suggest therein, since said ruling on their previous motion, Division Two of this court has handed down an opinion in the case of Sheets v. Iowa State Insurance Co., 226 Mo. 613, which, it is charged,

takes out of the case the alleged constitutional question. This second motion to transfer we have but recently overruled, but it was thought best to follow such ruling with an opinion, and therefore this opinion in pursuance of an assignment for that purpose.

The constitutional question appears by reason of the giving of an instruction. In the present motion counsel for the respondent says:

"The appeal in this case was taken to this court on the theory that a constitutional question was involved on the record. This alleged constitutional question appears for the first time on the record in the twelfth, thirteenth, fourteenth and fifteenth grounds of appellant's motion for a new trial and is predicated exclusively, as I understand it, upon the giving of one instruction in behalf of the plaintiff, which was the only instruction given for the plaintiff. It is contended that that instruction violates the provisions of the Constitution mentioned in the motion for a new trial.

"This alleged constitutional question is not before this court for review.

"1st. Because the abstract of the record shows that no such objection was made by the appellant when the instruction was given by the court. [Sheets v. Iowa State Ins. Co., 226 Mo. 613, 619.]

"2d. Because the abstract of the record fails to show that any objection, either general or specific, was made to the giving of such instruction. [Sheets v. Iowa State Ins. Co., supra.]"

The bill of exceptions, now printed and on file in the case, sets out the instruction complained of, and is followed by this language:

"To which action of the court in giving said instruction to the jury, defendant then and there excepted at the time."

Counsel contend that under the ruling in the Sheets case, supra, this language is not sufficient to

preserve the instruction for review here, and that if such instruction is not here for review, then the alleged constitutional question is not in the case. Under the language of the Sheets case, the contention is well founded, but to our mind that case is wrong and should be overruled upon this point. The effect of the Sheets case is this: A party must first object to the giving of the instruction, and then the court overrules such objection, and the party then excepts to the action of the court in overruling the objection. In other words the course of proceeding to save the point as to an instruction must be the same as that of saving the point as to the introduction of evidence. This has never been understood as the rule in this State, and has never in recent years been announced as the rule until the Sheets case, supra. We have always held that to preserve the point for review as to the admission of evidence counsel must object to the introduction of the evidence. This objection calls for the ruling of the court, and counsel must then except to the ruling of the court if such ruling be adverse to him. In the same way we preserve the point as to improper remarks of counsel. [Eppstein v. Railroad, 197 Mo. l. c. 738.] In each case the objection is directed to a thing done by one other than the judge or court. The exception, however, goes to the action or ruling of the court. And herein lies the fallacy of the Sheets case. Instructions both given and refused are actions of the court. If instructions are asked by counsel they simply amount to a request to so instruct. If the request is refused, the party excepts to the action of the court in refusing such declaration of law. In such cases counsel do not object to the court refusing the instruction, and then except to the court's action in overruling the objection. And on the other hand if the court grants the request of one counsel and gives a declaration of law, such instruction is

the action of the court, and counsel upon the other side have only to except to the action of the court in giving the same. So, too, as to the motions for new trial and in arrest of judgment. When the court acts upon such motions the party simply excepts to the action of the court thereon.

As to an instruction the bill of exceptions should show an exception to the action of the court in giving or refusing it. As to the evidence it should show that the party objected to its introduction (thus calling for a ruling of the court) and then further show an exception to the action of the court. No book was more consistently followed in Missouri in the early days than Whittelsey's Missouri Practice. In this work at page 481 is given a form for a bill of exceptions. I dare say that this form has been practically if not literally followed from that day to this. Upon the question of instructions this form puts it thus:

"Whereupon the plaintiff prayed the court to instruct the jury as follows (here insert the same):

"Which instructions the court gave to the jury, to the giving of which instructions in behalf of the plaintiff, the defendant by his counsel then and there excepted at the time.

"The defendant upon his part prayed the court to instruct the jury as follows (here insert the same):

. . .

"Which instructions the court refused, to which refusal of the instructions thus prayed, the defendant by his counsel then and there excepted at the time."

At page 487 the author again speaks of the matter in language as follows: "It should be sufficient to say, 'To which ruling of the court in admitting said evidence against the objection of the party *or in giving or refusing such instructions,* the party excepted.' A bill of exceptions concluding thus, 'To which decisions of the court, the defendant excepted at the moment, shows that exceptions were properly taken to

the giving and refusing of instructions.' [Steamboat v. Smith, 10 Mo. 527; Ranney v. Thomas, 45 Mo. 111.''

The italics in the foregoing are ours. The author only uses the word 'objection' in connection with evidence. He does not use it in the clause relating to instructions. No lawyer within recent years has not substantially followed the old form in Whittelsey in preparing his bill of exceptions, and I dare say that the ruling in the Sheets case reaches practically every case upon appeal here and in the several courts of appeals. Within the writer's experience at the bar and upon the bench, that case is the first to challenge the sufficiency of the bill of exceptions in so far as instructions are concerned, when the exceptions were saved in language as quoted in the Sheets case. There is a case in the 8th Missouri (Vaulx v. Campbell, 8 Mo. 224) where it is said that there must be an objection and an exception as to refused or given instructions, but this case relies for authority on Shelton v. Ford, 7 Mo. 211, and when the latter case is examined it will be found that the rule stated was with reference to evidence and not instructions. In fact it furnished no basis for the ruling in the Vaulx case. And be it further said, that upon this point, the Vaulx case has not been cited from that day to this. The Shelton case, considering the point ruled, was well enough, and in accordance with our present rule.

In the later case of Elsner v. Supreme Lodge, 98 Mo. l. c. 644, the court practically settled the question now under consideration. There we had an erroneous instruction and the point made was that the exception had not been sufficiently preserved. The language of the exception is quoted and approved. We then said: ''Plaintiff's counsel, to destroy the force of this error, contend that no exception to it was saved. On this point the recital in the bill of exceptions is this: 'To which action of the court, in giving said instruction, defendant then and there *objected.*' Here

the objection was made immediately after the ruling and evidently for the purpose of review. Although the word 'excepted,' in that connection, would more fully meet the requirements of technical nicety, we are not prepared to say that it is essential. The law dictionaries of Bouvier and Burrill mention an 'objection' made to the decision of a judge in the course of a trial, as one of the definitions of the word 'exception,' and in Webster's Dictionary the latter word is given as a synonym for objection. Our duty is to so construe the code of practice as to distinguish between substance and form. [R. S. 1879, sec. 3586.] We think we do so in declaring that the word 'objected,' as above quoted from the record before us, should be regarded as of the same significance as 'excepted.' "

Here we hold that the word 'objected' if used after the ruling of the court is made is equivalent to the word 'excepted' and preserves the instructions for review.

To the same effect is Meyberg v. Jacobs, 40 Mo. App. l. c. 137, whereat ELLISON, J., says: "On the original consideration of this cause we did not pass upon interpleader's objections to instructions given for plaintiff, for the reason that we did not consider that exceptions had been saved by the action of the trial court. We are now satisfied that the bill of exceptions, as set forth in appellant's printed abstract, sufficiently stated an exception to the action of the trial court. [Elsner v. Supreme Lodge, 98 Mo. 640.] It shows the objections to the instructions were made *after* they had been passed upon, and was not a mere objection, in the first instance, to them being given."

In the early case of Steamboat Raritan v. Smith, 10 Mo. 527, Judge SCOTT, at the March term, 1847, of this court, had to deal with this question. In that case the exception as to the instructions was in this language: "To which several decisions of the court,

the defendant by his counsel excepted at the moment.''
Judge Scott in his usual terse and lawyer-like way
thus disposes of an objection to the sufficiency of
this exception: "We do not think that the bill of ex-
ceptions sustains the objection that no exceptions were
taken to the giving and refusing of instructions.''

We might go further, but we deem this sufficient.
We try cases upon appeal from a bill of "exceptions,''
not a bill of "objections.'' True it is that the word "ob-
ject'' in certain connections may have the same mean-
ing as "except.'' In the course of a trial an objection
is made to the end that a ruling of the court may be
had. This ruling is not upon what the court itself
has done, but upon what the parties are doing or offer-
ing to do. The objection goes to the act of persons
other than the court and is made to get action from the
court. When the court acts the error is preserved by
an exception to the ruling. Thus the origin of the
term "bill of exceptions.'' Nor will it do to say that
trial courts are imposed upon by reason of the rule
existing in this State from the opinion of Scott, J., in
1847, to this date, as indicated in the Sheets case,
supra. Counsel do not give or refuse instructions.
They simply request the same. The court gives in-
structions and frequently tells the jury that the dec-
larations of law given are the instructions of the
court. At common law the instructions were orally
given and no previous objection could be made. An
exception to the action of the court was all that could
be done.

When, under our law the court acts, either upon
request of counsel or upon its own motion in the mat-
ter of instructions, counsel only have to except to
such ruling. They are not required to object to the
instruction, and have their objection overruled, and
then except to the action of the court in overruling the
objection, rather than to the action of the court in
giving the instruction. The Sheets case, supra, is at

variance with the heretofore well recognized rule in this State. It establishes a new departure and one not founded in reason. If counsel "at the time" excepts to the action of the court in giving or refusing an instruction, the trial court is apprised that error is to be charged thereon. Before reading the same to the jury, such court can, if desired, be fully informed as to the ground of exception. But we need not go further. Upon the question at issue the Sheets case is wrong, and should be and is overruled.

Another reason might be assigned for the **overruling** of this second motion, but the question herein discussed was the one calling for an opinion upon a motion (a thing not unusual) and having discussed it, we conclude by saying that the motion was rightfully overruled.

*Valliant, C. J., Kennish, Ferriss* and *Brown, JJ.,* concur; *Lamm, J.,* concurs in separate opinion; *Woodson, J.,* dissents in opinion filed.

## SEPARATE CONCURRING OPINION.

LAMM, J.—I concur fully with my brother GRAVES' opinion. I do not understand that opinion to hold that counsel might not betimes be shown an instruction and specifically asked by the trial court if he objected to it. I do not understand that opinion to hold that counsel, to deal fairly with the trial court, could refuse to answer that request, or, having answered he had no objection, could thereafter save an exception and make that exception effective on appeal. If counsel stood mute when inquired of by the court in that behalf, or if he answered, no, he might estop himself to afterwards speak here, or say, yes. We can deal with such a case when we have it. When a court refuses to counsel the right to examine instructions and exception is taken to that course, we can deal with that case when here. The case at bar is one

merely raising the question whether an exception to an instruction is effective to have the instruction reviewed on appeal—nothing more appearing. The principal opinion, on reason and authority, returns to a rule of practice in vogue in Missouri appellate courts for generations up to the Sheets case. We are but going back to the beaten way. The doctrine of the Sheets case, then, is a somewhat virgin doctrine in this jurisdiction. Being new, the maxim applies: Novelty benefits not so much by its utility, as it disturbs by its novelty. Doubtless, two-thirds of the cases now pending in appellate courts would ride off on the Sheets case if it be followed as soundly ruled—an alarming result.

## DISSENTING OPINION.

WOODSON, J.—I am unable to concur with the opinion of my learned associates written in this case, and will proceed to give the reasons for the faith that is within me.

The opinion concedes that in order to properly bring before this court for review the ruling of the trial court as to the admission and rejection of evidence, counsel must first object to its introduction, and then except to the ruling of the court in that regard. But independent of that concession, it is elementary that before this court will review the action of the trial court in admitting and rejecting evidence, an objection must not only be first made thereto, but the objection must specify the particular grounds upon which it is predicated; and after the court overrules the objection, counsel making the same must save his exceptions. [Parsons v. Railroad, 94 Mo. 286; Wayne County v. Railroad, 66 Mo. 77; Huhn v. Railroad, 92 Mo. 440; State v. Lett, 85 Mo. 52; Board of Trustees v. Peirsol, 161 Mo. 270.]

The object of that rule is that the court may have counsel's theory of the evidence, as well as their views and learning thereon, who, as a rule, having investigated the question before going into the trial, presumably know more about the competency of the evidence than the court does, who, perhaps never heard of the case before it was called for trial.

But my learned associates hold that neither this wise rule of practice, nor the reasons therefor, apply to the giving and refusing of instructions; and therefore, no objection need be made to the giving and rejection of instructions; and that all that is necessary to be done in order to have this court review the action of the trial court in that regard is to simply except to the court's rulings.

The reason assigned by the majority opinion as to why the rule applicable to the admission and rejection of evidence should not apply to the giving and refusal of instructions is anomalous to me. They say that the instructions given are the instructions of the court, and counsel have no opportunity of knowing what they will contain until after they are given, and, therefore, they are in no position to make an intelligent objection thereto before they are given, and consequently, the only remaining thing to be done in the premises is to preserve their rights by excepting to the action of the court in that regard.

Is that true? Has it come to the pass, where counsel, sworn officers of the court and the representatives of litigants therein, where their lives, liberty and property are involved, dare not ask the trial court the privilege of seeing and reading the instructions before they are given? I think not. I know of no such judge; and if there is such, then the sooner he is impeached or defeated for re-election, the better it will be for the people of his circuit.

Besides that, while it is true the instructions are the instructions of the court, yet it is equally true that

practically the universal practice is that counsel for the respective parties prepare the instructions and request the court to give them as thus prepared, and there is ample opportunity for each to read and object to the other's instructions before they are passed upon by the court. In fact, in most, if not in all the circuits with which I am familiar, the court has a regular rule requiring counsel to prepare their instructions, as far as it. is practicable, before the close of the evidence in the cause. This is for the express purpose of enabling counsel to read each other's instructions and to make such objections thereto as they may deem proper without delay to the court, while they are being drawn and considered by counsel. So it must follow that there is no possible injury which can befall either party if this rule is observed and enforced.

It simply requires promptness and vigilance on the part of counsel in the trial of causes; and to that they should not object, for the reason that that is the very purpose for which they are employed.

I do not mean to convey the idea that, in making objections to instructions when they are asked, counsel should frame such objections with that degree of nicety with which they are stated and discussed in this court on appeal or writ of error, but the objections should be sufficiently specific to intelligently call to the mind of the trial court the error counsel contend the instructions contain.

Not only is that argument of the majority fallacious, in my opinion, but it is not predicated upon facts. The uniform practice which prevails throughout this State, and elswhere, wherever the law requires the instructions to be in writing, is that counsel for the respective parties prepare the instructions for their clients, and request the court to give them. Especially is this. true where the legal propositions involved are difficult of solution. Nor have I ever heard of a court refusing counsel the privilege of seeing the

instructions asked by the counsel for the opposite party prior to the court's ruling thereon; but upon the other hand, my experience and observation has been that courts invariably request counsel for the respective parties to exchange instructions prepared by them in order that they may assist the court in arriving correctly at the law of the case by pointing out any error they may contain, and thereby enabling the court to avoid error in declaring the law. It is here where counsel can best serve their clients' interests, and better aid the court in the proper administration of the law than anywhere else.

Without this assistance of counsel, the court, in all probability, knows nothing more about the law of the case than counsel did when the case first came into his office. But after days, weeks and perhaps months of investigation and study, counsel should learn something about the law of the case, and thereby be enabled to render valuable assistance in aiding the court to arrive at correct legal conclusions.

The very purpose and functions of lawyers are, that, by reason of their ability, skill and learning, they are enabled to properly advise and skillfully prepare cases for trial, and so present them to the courts of the country that a speedy and substantial justice may be done litigants without requiring the courts to take the time to investigate the law and facts after the case is called for trial. By this valuable assistance of counsel, the labors of the courts are greatly minimized, and justice is speedily and substantially administered.

Every litigant of this State has a constitutional right to be heard either in person or by counsel, upon both the law and facts of his case, and that means a real hearing, not merely a hearing in name. But, according to the holding of the majority opinion, each and every trial judge in this State is given the absolute power to say to every litigant, "I will not hear

you upon the legal questions involved in your case. I will decide those questions without your assistance, hearing or counsel." Instead of encouraging such practice and usurpation of power, if it exists, this court should, in unmistakable terms, place its seal of condemnation thereon, and require the trial courts to give counsel a respectful hearing upon the law of the case, and furnish them reasonable opportunities to see and read the instructions before they are given, in order that they may point out any error they may contain and make intelligent objections thereto, just as is done in passing upon the evidence of the case. It seems to me that any court which desires to do justice would gladly avail itself of the advice of counsel regarding the legal propositions involved, especially where they have investigated them previous to the day of trial, which is usually the case, as we know from observation and experience; and not turn a deaf ear and refuse to permit counsel to see the instructions previous to the time they are given. The opinion in this case assumes and justifies the trial court in doing those things. That assumption, however, I am glad to say, is not well founded, for I have been able to find but one case where the trial court undertook to do anything which smacks of such tyranny and oppression. That, in a degree, was undertaken in the case of Anderson v. City of Huntington, 81 N. E. l. c. 222, as will appear from the following extract therefrom:

"The ninth reason in said motion is that, at the beginning of the argument, plaintiff's attorney demanded of the court that he be allowed an inspection of the instructions before the beginning of said argument, and that he demanded of the court an intimation of the instructions as would be given by the court, to which demand the court announced to said attorney at said time that he would not give said instructions in writing, and that he would not furnish the sub-

stance of said instructions to said attorney, nor would
he furnish them to him in writing for said purpose,
and the court did not furnish the substance of said in-
structions, nor make the same known to said attorney
before the beginning of the argument. The bill of
exceptions shows that just before the defendant had
rested in putting in the evidence of the defense, and
before the beginning of the argument in said cause,
plaintiff asked the court that he be allowed an in-
spection of the instructions before the beginning of
said argument; that the judge replied that he had had
no opportunity to reduce the instructions to writing,
and he expected to instruct the jury orally; that he
did not want to delay the trial to prepare written in-
structions. Whereupon counsel for plaintiff said he
would like to know the substance of the instructions
which the court would give. Nothing more was said
relative to instructions at that time and no objection
was made and no exceptions taken at the time by the
plaintiff during the same term, but after the jury had
returned their verdict and had been discharged, ex-
cepted to said action of the court. The exception is thus
shown not to have been timely taken.''

I am unable to see any reason, except the oppress-
iveness of a tyrannical judge, why counsel should not
be permitted to point out the errors, if any, contained
in the instructions, and object to them on that account,
in the same manner that evidence is objected to. If
counsel has not this right, then I am unable to see
what possible assistance or benefit he can be to the
court or client in the administration of justice.

Such practice ignores counsel at the place where
he is more capable of rendering more valuable assist-
ance to the court than at any other place, and induces
the courts to declare the law without investigation
or proper knowledge thereof, and consequently, leads to
many erroneous rulings, causes appeals, and delay in
the administration of the law.

The majority opinion has cited no adjudication of this State or elsewhere which supports the conclusions there stated, and I venture the assertion that there are none, for I have made quite an exhaustive research of the question, and have found none. The case of Steamboat v. Smith, 10 Mo. 527, cited therein, falls far short of being an authority therefor. I will quote every word of that case bearing upon the question now under consideration in order to show that my learned associate totally misunderstood that case.

On page 530, Judge Scott says: "The bill of exceptions concludes with the following words: 'To which several decisions of the court, the defendant by his counsel excepted at the moment.'" Upon that showing in the record, counsel for appellant contended in that case that the giving and refusal of instructions were not properly *excepted* to in the following language: "The giving and refusal of instructions were not properly *excepted* to, and the error of the court in that respect, if any, cannot be taken notice of, on motion for a new trial." In discussing that question Judge Scott, on page 531, said: "We do not think that the bill of exceptions sustains the objection that no *exceptions* were taken to the giving and refusing of instructions."

The foregoing embraces all the court and counsel said upon this subject, and by reading the same it will be seen that Judge Scott, at the very outset, states that, "The bill of exceptions concludes with the following words"—then follow the words first before quoted. He does not undertake to state what preceded the closing clause of the bill of exceptions, nor does he state whether or not the instructions had previously been objected to; but he and counsel were dealing solely with the question of *exceptions,* and not objections, as shown by all his language, as before quoted.

In Vaulx v. Campbell, 8 Mo. 224, the exact point now under consideration was presented to this court, and on page 227 Judge TOMPKINS, in speaking for the court, said: "To this instruction the plaintiff objected, but he did not except to the opinion of the court overruling his objection; and in Shelton v. Ford, 7 Mo. 211, it is decided by this court that 'it is not sufficient to say that he objects, he must save his objection on the record by excepting to the opinion of the court in overruling his objection.'"

My learned associates seem to lay much stress upon the fact that Judge SCOTT wrote the opinion in the case of Steamboat v. Smith, supra. If that fact adds much weight to that case, then the case of Vaulx v. Campbell, supra, should not be devoid of all weight, for the reason that Judge SCOTT concurred in the opinion written therein by Judge TOMPKINS. But it is said the latter case has never been cited since its rendition. That is a mistake. It has been referred to many times, but not that portion of the opinion bearing upon the question in hand. Neither has the Steamboat-Smith case been cited in so far as the question here involved is concerned. So, if we are to gauge the weight of these cases by origin, history and collateral bearing, I respectfully submit that Vaulx v. Campbell is entitled to as much, if not greater weight than is the case of Steamboat v. Smith, especially when the latter has no earthly application to the case at bar.

The case of Sheets v. Iowa State Insurance Co., 226 Mo. 613, is directly in point here, and, if adhered to, this cause should be transferred to the St. Louis Court of Appeals, because the constitutional question was not timely raised. In so far as it is material, on page 617, it reads as follows:

"The only objection made by counsel for appellant to the action of the court in giving said instruction numbered 3 is contained in the following lan-

guage: 'Which said instructions numbered 1, 2, 3, 4, 5, 6, 7, 8 and 9 asked by plaintiff, and each of them, the defendant then and there excepted and still excepts.' "

"While the foregoing language saves appellant's exceptions to the action of the court in giving said instruction numbered 3, yet the record nowhere shows that counsel for appellant made any objection whatever to the same, or to the action of the court in giving it.

"It is elementary that before one can legally except to the action of the court in giving or refusing instructions, he must first request the court to give same or object thereto, as the case may be, before his exceptions will be availing. This alone, if it was all that is disclosed by the record, would show that appellant not only failed to raise the constitutionality of the section of the statute mentioned, but also, that appellant failed to object to the giving of the instruction itself in any manner, as before stated. But that is not the entire disclosure made by this record.

"It shows that the constitutionality of said statute was not questioned until the motion for a new trial was filed. That question was first mentioned in said motion."

In the case of Robinson v. Helena Light and Ry. Co., 38 Mont. 222, this same question was before the Supreme Court of Montana. While Montana has a statute bearing upon the question, yet it will be seen from the language presently quoted that the decision was not based upon the statute but was based upon the general procedure in force throughout the country. The language of the Supreme Court of Montana is as follows: "It is insisted by counsel for plaintiff that the error assigned upon this instruction is not properly before this court for examination, because it does not appear from the record that a formal exception to

the giving of the instruction was reserved in the trial court after the objection had been overruled.

"Under section 6746, Revised Codes, at the settlement of the instructions as therein provided, counsel must state his objection to the particular instruction, and if the objection is overruled, reserve his exception.   The language of the section confuses the meaning, to some extent, of the terms 'objection' and 'exception;' but orderly procedure requires an exception after the objection has been disposed of, in order to enable counsel to urge the action of the court thereon on motion for a new trial, or on appeal, as in case of all other rulings that are regarded as objectionable, and to which objection must be taken.   Technically, therefore, counsel for defendant have no right to have this court review the action of the trial court in this particular.   Since, however, the question presented is of some importance, and a new trial must be ordered for the reason already stated, we shall venture to indicate briefly our views."

To the same effect is the case of Yergy v. Helena Light & Ry. Co., 39 Mont. 213.   I have not this case before me, but judging from a note thereof, the opinion was based upon a statute.

To the same effect is Ross v. Saylor, 104 Pac. 864.

Recently, within the last three or four months, this identical case came before this Court in Banc, on a motion filed in a cause, the style of which I now disremember, as there was no written opinion delivered. In that case the plaintiff recovered a judgment below, and defendant appealed to this court.   In due time, respondent filed a motion in Banc, asking that the cause be transferred to the Court of Appeals, for the reason that the amount involved was a less sum than $7500, and that no constitutional question was involved.   There was an act of the Legislature governing, at least partially governing, plaintiff's cause of

action. Appellant in his suggestions in opposition to the motion to transfer to the Court of Appeals showed by the record, that said act of the Legislature was not mentioned in the pleadings, evidence or instructions; however, the instructions for respondent were drawn in harmony with the legislative act. There were no objections made to the instructions, save as was shown by the bill of exceptions, that appellant duly excepted, etc. In due time appellant filed his motion for a new trial, and, among other reasons assigned therefor, assailed the constitutionality of said act of the Legislature, referrring to it in terms, and specifically stated what sections of the Constitution it violated, together with the reasons therefor. Upon that state of the record, counsel for respondent insisted that the constitutional question mentioned in the motion for a new trial was not timely raised; that the question should have been raised by specific objections made against respondent's instructions when they were asked, and that not having done so, the constitutional question was waived. In opposition to that contention, counsel for appellant cited and relied upon an opinion written by Judge LAMM, in the case of Lohmeyer v. Cordage Co., 214 Mo. l. c. 686, holding that in certain cases the motion for a new trial was the first door opened through which a constitutional question could be raised.

During the discussion of that opinion, the writer called the court's attention to the Sheets-Campbell case (which the majority opinion now overrules) and stated that it was directly in point, and that it clearly distinguished the question in hand from that involved in the Lohmeyer-Cordage Co. case. It was there unanimously agreed that the Lohmeyer case was not applicable, and that the Sheets-Campbell case was controlling therein, and in consequence thereof the Court in Banc unanimously held that the constitutional question had not been raised in time, and was therefore waived, and the cause was transferred to the Court of Appeals. The

express grounds upon which the order of transfer in that case was based was that plaintiff should have raised the constitutional question by specific objection made to respondent's instructions on that ground when and at the time they were asked, and that he could not stand idly by until after verdict and then for the first time, by the motion for a new trial, interject a constitutional question which was never presented to the court for decision, and which in all probability the court never heard of during the progress of the trial, and certain it is, as shown by the record, the court never passed upon that question until it did so in passing upon the motion for a new trial.

Judge GANTT and myself, and probably others of the judges, went further, and, at the suggestion of Judge GANTT, thought it would have been better practice if counsel for appellant in that case had at the time when respondent asked his instruction, not only specifically objected to them because the act upon which they were predicated was unconstitutional, but also he should have asked a counter-instruction, requesting the circuit court in express terms to declare and hold said act unconstitutional, mentioning the sections of the Constitution it violated and specifying the reasons therefor. There can be no question but what that is the proper practice, otherwise the trial court might be convicted of error in deciding a question which it never heard of, much less passed upon.

The purpose of the motion for a new trial, as I always understood it, was to call the trial court's attention to its previous rulings, made during the course of the trial, and thereby give it an opportunity to correct any erroneous ruling it may have committed during that time; but if the doctrine announced in the majority opinion is to become the practice, then the motion for a new trial becomes the means through which objections to the rulings of the court are to be made, and that too after the ruling has been made and the trial has

been concluded, and not, as we have all along supposed it to be, a statement of the errors alleged to have been committed by the court during the progress of the trial, and a request that it correct the same. Also, see, Gronan v. Kukkuck, 59 Iowa 18.

To the same effect is Baltimore & Ohio R. R. Co. v. Lee, 106 Va. l. c. 34. There the court in discussing this question said: "The language of this addendum appears also at the foot of instruction 13, which was given by the court, and does not appear to have been objected to in that connection: 'It is contended that inasmuch as the defendant failed to make objection to instruction 13, which was given by the court, it cannot now object to the addendum to instructions 7, 8, 9 and 12 which were asked for by the defendant. In support of this contention, the rule announced in the case of Va., etc., Co. v. Bailey, 103 Va. 205, and other cases, is invoked. This rule is that although exception to the testimony of a witness may be well taken, if the same fact is subsequently proved by other witnesses, without objection, the error will be deemed harmless.' This rule has no application to the question under consideration. The defendant has already objected to the addendum four times, and had made that objection the subject of a bill of exceptions each time. This was entirely sufficient to save the question and make it the subject of review by this court. The defendant was not called upon to repeat indefinitely the same objection, or to continue to protest against the use of language by the court in framing instructions which the court had already passed upon and held to be proper. It was the law that was complained of, not the number of times the court repeated the propositions to the jury. If the defendant was prejudiced by the first statement of the erroneous proposition of law, and the question was then properly saved, he has the right to have the error reviewed, although it may have been subsequently repeated without objection being taken.

It would have been an idle ceremony to have enrolled and sealed a bill of exceptions to set out an error that was already embodied in the record four times.   The failure, therefore, to embody instruction 13 in a bill of exceptions cannot impair the right of the defendant to rely in this court upon its exception duly taken to instructions 7, 8, 9 and 12, as modified by the circuit court.''

There is another large class of cases in this and in our sister states, which show that the universal practice is, that the instructions must be objected to before an exception to the ruling of the court thereon can be properly saved, namely: That multitude of cases hold that when an instruction is faulty because of the omission of some element therefrom, and not for misdirection, then the aggrieved party must supply the omission by asking a supplementary instruction supplying the omission, where it can be done without injury to him; but where it cannot be done without such injury then he must call the court's attention to the omission by an objection to the instruction, and request the court to correct the same in that regard.   He cannot stand idly by until the conclusion of the trial and then for the first time raise the question by simply *excepting.* [Morgan v. Mulhall, 214 Mo. l. c. 462-464.]

In Taggart v. McKinsey, 85 Ind. l. c. 396, the Supreme Court of Indiana said: ''Counsel do not complain of what the instruction states, but of what it omits to state.   The proper remedy for such an omission is, not an exception to the instruction given, but a request to the court to give an instruction supplying or covering the omission.   Then, if the court refuse to give the instruction asked for, and the proper exception is saved, the error, if it be an error, will be presented by the record.   But in such case, the party cannot by merely saving an exception to the instruction

given, get an available error into the record.    [Jones
v. Hathaway, 77 Ind. 14.]"

In Raymond v. Nye, 46 Mass. 1. c. 154, the Supreme
Court of Massachusetts said: "The appropriate rem-
edy, when the counsel seriously apprehend that the
charge may be misunderstood, or is not sufficiently di-
rect and explicit in matter of law, is to suggest the
same before the case is committed to the jury.    [La-
throp v. Inhabitants of Sharon, 12 Pick. 172.]"

See, also, Middlebrook v. Slocum, 152 Mich. 1. c.
290; and Block v. Railroad, 106 Minn. 285.

It is useless to carry the latter thought further,
as it was intended simply to illustrate how fallacious
is the contention that it is not the proper practice to
object to instructions when asked, as well as to ex-
cept to the ruling of the court thereon at the time.

The majority opinion seems to lay some stress
upon the fact that Webster and certain other lexicog-
raphers have defined the words "object" and "ex-
cept," in certain instances, to mean one and the same
thing.    To my mind, it does not take much of a lexi-
cographer, or a man of a very high degree of common
sense, to understand and know that there is a broad dis-
tinction between the word "object" when addressed
by counsel to the court in opposition to an instruction
asked by counsel upon the other side and the word "ex-
cept" when made by the latter and addressed to the
court in opposition to its ruling made upon the instruc-
tion asked.

The former refers to the instruction, and the latter
to the action of the court.    The former in the very
nature of things is made before the court makes its
ruling, and the latter after it is made.

But, finally, let us look at this question from the
ordinary common sense view as it is presented to us
every day in our courts of justice; and, in doing so, let
us not forget that the court is not a tyrant, nor are the
lawyers of the State sphinx-like in character, as some

of the argument advanced in favor of the majority opinion might lead one to believe who is not familiar with the situation; but are men of blood, flesh and bone, possessing action and motion, endowed with intelligence and courage, knowing their rights and not afraid or backward in asserting them. Upon entering the courtroom we see the court presided over by an intelligent judge, learned in the law, desirous of meting out justice according to law. The jury is in the box, listening to the evidence and the rulings of the court. The witnesses appear one by one and tell what they know of the case. The litigants are there, earnest and grave in appearance, watching every movement and listening to every word of the court, jury and counsel. The latter, inspired with the responsibility of his position and fired with ambition of success, is spurred on to his best. His mind is bright and active; perception keen; discrimination quick; eyes alert and ever acute. In whose presence, at the close of the testimony, the instructions are handed up to the court. No power or authority can prevent, rather has ever prevented, counsel from seeing those instructions before they are given or refused. The same may be said of those written by the court and given of its own motion. I dare say there is not one case in ten thousand where the court ever refused counsel the right and privilege of seeing the instructions when requested, or denied him the right to suggest, point out and object to any error that he may believe to exist therein. If such denial should be made by a court in the trial of a case, counsel could and doubtless would object to such action of the court and lodge it in the bill of exceptions and bring it here for review. In fact, I never saw or heard of a case where those rights were denied counsel, except in the Indiana case previously mentioned; but, upon the other hand, my long experience and observation have been that the courts are only too glad to have the valuable assistance of counsel in settling the instructions and law

of the case; and it may be said to the credit of the trial courts of this State that I have never seen or heard of a case where the assistance of counsel was ever declined.

So much for general and preliminary observations. We will now come to the question in hand, and see what the practical result would be if we should adopt the practice announced in the majority opinion.

First. If instructions were handed to the court with the request that they be given, then, under the rule announced, opposite counsel could respectfully decline, upon the request of the court, to point out any objections, if any, he may have to the same, and quietly await the action of the court in passing upon the instructions and then simply except in general terms; and, after verdict and judgment, file a formal motion for a new trial, also general in its terms, stating no specific objection to any instruction, save that they are erroneous, illegal, etc., appeal the case to this court, and here for the first time develop his points, and present to this court questions for determination and reversal of the judgment which the trial court never heard of or dreamed about, much less ever having passed upon them.

Such masked batteries are more becoming hostile armies on the field of battle than they are to courts of justice in the administration of the law, in a civilized and enlightened country; and if it were not for the seriousness of the situation, the approval of such practice and mock justice by the highest court of the land, it would be grotesque in the extreme.

Second. Not only could counsel decline to object and point out errors in the opposite party's instructions when requested to do so by the court, as previously suggested, but he could also tacitly mislead the court into giving erroneous instructions by not objecting to them when he had the opportunity to do so, and sim-

ply except to the ruling of the court after they had been given. Then counsel could file his motion for a new trial, assail the instructions as being illegal and improper in general terms, appeal to this court, and, again, for the first time present to this court the errors contained in the instructions given by the trial court; and perhaps again reverse the circuit court for an error that was never presented to it for decision, and which was never in fact decided by it, and which in all probability it never heard of.

If counsel should be guilty of such negligent conduct regarding the introduction of evidence when offered by the opposite party he would not thereafter be heard to say that he at the time excepted to the action of the court in admitting the evidence. He cannot sit idly by and witness the introduction of evidence, and after its admission accept it as legitimate testimony in the cause, if it proves favorable to his side of the cause, or upon the other hand object to the same and have it stricken out, if in his judgment such evidence is detrimental to him.

He will not thus be permitted to blow hot and cold with the court. If he neglects to timely object, then the door to a future hearing is forever closed against him. That being unquestionably the law, when applied to the evidence, then how much stronger is the reason for requiring counsel to object to instructions when asked by the opposite party, or when given by the court of its own motion.

Where is the trial judge or active practitioner in this State who has not experienced just such results as I have before suggested, and that too in spite of the stringent rules of practice which have heretofore prevailed in this State? A number of cases have been appealed to this court and to the Court of Appeals from judgments rendered in causes by the court over which I had the honor of presiding, and reversed for some

alleged error which I never heard of and which was never presented to the court for adjudication; and I dare say that there are but few, if any, circuit judges in the State but who have had the same experience. In the light of that experience are we to go further and throw down the bars and abolish all rules which require specific objections to be made to the introduction of testimony and to the giving of instructions, which will be done if the majority opinion is to become the rule? Under such a rule of procedure, the practice of law in this State will become a hidden art, conducted not by an open and wisely guided hand, but by a shrewd and hidden hand. Such a course, if pursued, will result in additional delays in the administration of justice, encourage appeals, increase costs of litigation, and result in hollow and mock justice.

I might go on *ad infinitum,* giving instance after instance where such a rule of practice would and most certainly will lead to bringing just reproach upon the courts, if not upon law itself; but since no good can flow therefrom, I will press that matter no further. The instances mentioned fully illustrate the evil results of such a rule.

I am, therefore, of the opinion that the cause should be transferred to the St. Louis Court of Appeals.